ROXIE A. PEARSALL v. THE BOARD OF SUPERVISORS OF EATON COUNTY.[1]

*Board of supervisors—Authority to lay out or discontinue State roads—Damages to land-owner—Eminent domain.*

1. In this case the proceedings of the board of supervisors of Eaton county, discontinuing a portion of a State road, are quashed, for reasons stated in the opinion.

2. The following propositions relating to the power of the board of supervisors to lay out or discontinue State roads, and the manner of its exercise, are summarized from the opinion of Mr. Justice CHAMPLIN:

*a*—A board of supervisors have jurisdiction under How. Stat. § 497, to discontinue a State road *without* the presentation of the petitions provided for by How. Stat. § 498 (*People v. Supervisors*, 20 Mich. 101), and when set in motion by such petitions their *insufficiency* is an *irregularity*, not going to the jurisdiction, but which will be considered on *certiorari* as affecting the validity of the proceedings in the particular case as injuriously affecting the rights of the petitioners for the writ.

*b*—The board of supervisors have not absolute and unlimited power to discontinue State roads. It is only when they deem it for the interest of the public that they are authorized so to do; and it must appear in some form in the record of their proceedings that their action is based upon what they deem for the interest of the public; and this fact cannot be gathered from the result of such action, when they are set in motion by the petition of interested parties.

*c*—When the exercise of authority is limited by statute, and it affects the rights of individuals by divesting them of property or valuable rights, the record of the proceedings must show that the act by which this is done is within the limits of the power conferred.

*d*—How. Stat. § 501, requiring every order, resolution, and determination of a board of supervisors, made in pursuance of the act authorizing them to discontinue State roads, to be recorded in the records of the board, and to be signed by the chairman and clerk of such board, is *mandatory*, and was

---

[1] For a second report of this case see 74 Mich. —— (42 N. W. Rep. 77).

enacted for the protection of both public interests and private rights; and in the absence of such authenticated record the presumption that public officers perform their duty cannot sustain the action taken, whatever it may be.

*e*—It is not conceded that the action of the board of supervisors in laying out or discontinuing a State road is so purely of a legislative character as to dispense with the safeguards of the Constitution for the protection of private rights, nor with notice to parties directly interested and affected by the proceedings, required to bring such proceedings within the requirements of due process of law.

*f*—When the right of eminent domain is exercised by any other authority than highway commissioners in laying out or discontinuing highways, the constitutional requirement of a jury is retained.

*g*—At time of filing the opinion in this case there is no law by which a party aggrieved can have his damages and compensation ascertained by a jury when the board of supervisors lay out or discontinue a State road, Act No. 179, Laws of 1887, not providing for a constitutional jury of twelve.[1]

*Certiorari* to review proceedings for discontinuing a State road. Argued June 26, 1888. Proceedings quashed October 5, 1888. The facts are stated in the opinion.

*Alexander & Patterson,* for petitioner.

*Huggett & Smith,* for respondents.

[The points of counsel are fully stated in opinion. — REPORTER.]

CHAMPLIN, J. The plaintiff sued out a writ of *certiorari* for the purpose of having this Court review the proceedings of the board of supervisors of the county of Eaton in discontinuing a portion of a certain State road in Eaton county, known as the "Lansing and Allegan State Road."

The plaintiff contends that the portion of the road so

---

[1] Act No. 250, Laws of 1889, repeals the act of 1887, and provides for a jury of twelve freeholders, etc.

discontinued is not a State or territorial road, but is a township road, duly laid out by the township authorities as early as 1840. She sets out in her petition a record of a survey made by the commissioners of highways, dated March 15, 1840, and established as such by the commissioners, May 5, 1841.

The return of the board of supervisors to the writ sets forth the proceedings had in reference to discontinuing the road, which they allege was laid out and established as a State road in pursuance of Act No. 83 of the Laws of 1848 ; and they deny that the road described in the survey, and laid out by the highway commissioners in 1841, is identical with the survey and road laid out under the authority of the aforesaid act. They include in their return the survey of that portion of the road discontinued as it was laid out under the authority of the act, and it is quite apparent that they do not run upon the same line.

The survey of the State road which has been discontinued commences 92 rods S. of the quarter-post between sections 18 and 19 in the township of Delta;· thence S. 47 deg. and 45 min. W., 201 rods, to the town line between Delta and Oneida townships; then on the same course, 135 rods to the section line between sections 24 and 25 in Oneida township.

The survey of the highway commissioners commences on the county line near the N. E. corner of Delta township, and by various courses and distances runs to the S. W. corner of section 9; but from that point the survey mentions no known monument or line of the government survey until it reaches the quarter-post upon the W. line of section 25 in Oneida township. It gives the course of a line running through section 19 of Delta, and 25 of Oneida, as being S. 41 deg. and 30 min., but without saying whether E. or W., but presumably W., as the next course

reaches the W. line of the section; and the distance of this course is stated at 118 chains; so that it appears there is a difference of 6 degrees and 15 minutes in the course, and more than a hundred rods difference in the distance run upon such course. In the absence of testimony accounting for this discrepancy, we cannot presume that they are the same line, especially when the return denies that they are the same.

The plaintiff contends further that, if it be conceded that this is a State road, the board of supervisors acted without jurisdiction in discontinuing it, because—

1. They had no evidence before them that this was a State road.

2. The petition presented, asking for the discontinuance of this portion of the road, was insufficient, because it did not state of which of the two towns of Delta or Oneida the petitioners were freeholders.

The first objection to the jurisdiction is not tenable. It sufficiently appeared from the act of the Legislature, and the petition and papers before them, that the road which they discontinued was a State road.

The validity of the second objection depends upon whether any petition is necessary to confer jurisdiction upon the board to act in discontinuing a State road. This question was discussed in *People v. Supervisors*, 20 Mich. 95, and the conclusion reached that no petition was necessary in order to confer jurisdiction. It follows from that position that when the board is set in motion by the petition of at least 12 freeholders, as required by the statute, of each town through which the road passes, an insufficient petition would be an irregularity, not going to the jurisdiction, but to be considered in disposing of the case as affecting the validity of the proceedings in the particular case as injuriously affecting the rights of parties who sue out the writ.

The plaintiff shows that she is injuriously affected by the discontinuance of the road. By the exhibit, which is made a part of her petition, it appears that her house is located upon one side of this highway, and her barn upon the other, and near the east side of her 65-acre lot, and near its north end, thus leaving her a great distance from any public highway.

The supervisors did not act upon their own motion to take up this road, but upon petitions requesting them to take up and discontinue the—

"Highway known as the 'Eaton and Allegan State Road,' beginning at a point where said State road crosses the section line between sections 24 and 25 in Oneida, and running north-east across the S. E. ¼ of section 24 in Oneida, and section 19 in Delta."

The petition was signed by Isaac Munton and 30 others, who described themselves in the petition as "freeholders and residents of the townships of Oneida and Delta." There was nothing to show which township they were residents and freeholders of. Another petition, signed by C. Glenn and 16 others, describing themselves as "freeholders and residents of the townships of Oneida and Delta," was presented, asking the board to discontinue the same piece of road.

The petitions were referred to a committee on roads and bridges, who reported that they had had under consideration the petition of C. Glenn and 16 others from the township of Oneida, and of Isaac Munton and 30 others of the township of Delta, to discontinue a piece of State road described in the petitions, and recommended that the prayer of the petitioners be granted. The board then directed the commissioners of highways of the townships of Oneida and Delta to make a survey of this portion of the State road, and report the same to the board, which was done. This was referred to the committee on

roads and bridges, who reported the same back, with a recommendation that the portion of the State road described in the survey-bill be discontinued. The record of the action of the board upon the report of the committee is as follows :

"*Resolved*, that the report of the committee on roads and bridges recommending the discontinuance of the State road on sec. 24 of Oneida and sec. 19 of Delta, this day submitted, be adopted, and that the said road as described in the survey-bill set forth in said report be, and the same is hereby, discontinued."

Nowhere does it appear in these proceedings that the requisite number of freeholders of each of the towns subscribed either petition. The board of supervisors have not absolute and unlimited power to lay out or discontinue a State road. It is only when they deem it for the interest of the public that they are authorized to do so. This is a limitation upon their power to act; and it must appear in some form in the record of their proceedings that their action is based upon what they deem for the interest of the public. This fact cannot be gathered from the result of their action, where they are set in motion by the petition of interested parties. These petitioners may be influenced, and have in view purely private interests, which may be antagonistic to those of the public. Some may sign a petition to discontinue a highway simply to save the expense of keeping the highway, or may be a bridge upon it, in repair; others may be influenced by a desire to divert travel so as to bring it in front of their premises, and they may not take into account the convenience or inconvenience of the public at all in signing the petition. And it is possible for a board of supervisors to grant the prayer of such petitioners without themselves at all considering the interests of the public in the action they are taking.

It does not appear from the record in this case that

the interests of the public were thought of by the body composing the board of supervisors. Certain persons petitioned the board to discontinue the road; the committee on roads and bridges recommended that it be discontinued, without assigning any reason; and the board adopted the recommendation, and discontinued the road. There is nothing to show that this action was not in direct contravention of the public interests, unless it may be said that public officers may always be presumed to act honestly, legally, and in the interests of the public, and that the result must be taken as *prima facie* evidence that they have done so. But when the exercise of authority is limited by statute, and its exercise affects the private rights of individuals by divesting them of property or valuable rights, the record of the proceedings must show that the act by which this is done is within the limits of the power conferred.

Section 501, How. Stat., requires every order, resolution, and determination of such board of supervisors, made in pursuance of the act authorizing them to lay out or discontinue State roads, to be recorded in the records of the board, and to be signed by the chairman and clerk of such board. This section is mandatory, and was enacted for the protection of both public interests and private rights. This requirement would be needless if the presumption that public officers perform their duty would be sufficient to sustain their action, whatever it may be. The statute requires a record duly authenticated, not only that the result may be evidenced in an enduring form, but that it may be seen and known whether the board has acted within the limits of the power conferred or not.

There is another aspect of this case, not presented on the argument, that it may be well to notice. Article 10, § 11, Const., provides:

"The board of supervisors of each organized county may provide for laying out highways, constructing bridges, and organizing townships, under such restrictions and limitations as shall be prescribed by law."

This section was construed in *People v. Commissioners*, 15 Mich. 347, and in *Attorney General v. Bay Co.*, 34 Id. 46. The grant of power by this section must be construed in connection with Article 18, § 2, of the same instrument, which provides that,—

"When private property is taken for the use or benefit of the public, the necessity for using such property, and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders residing in the vicinity of such property, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law."

Under this provision it has been held that neither the necessity nor the compensation can be determined by legislative or municipal authorities. *Powers' Appeal*, 29 Mich. 504, 509; *Paul v. City of Detroit*, 32 Id. 108; *Sheldon v. Kalamazoo*, 24 Id. 386.

I am not prepared to concede that the action of the board of supervisors in laying out or discontinuing a State road is so purely of a legislative character as to dispense with the safeguards of the Constitution for the protection of private rights, nor with notice to parties directly interested and affected by the proceeding, required to bring such proceedings within the requirements of due process of law. The statute under which these proceedings were had was a re-enactment in 1851 (Laws of 1851, Act No. 156) of Act No. 146 of 1846, which was passed before our present Constitution; and in the re-enactment the Legislature does not seem to have had in mind the provision from the Constitution last quoted. They retained the section relative to compensation contained in the old act, viz.:

"Any person feeling himself aggrieved by the laying out, altering, discontinuing, or opening of any road or roads may have his damages appraised, and obtain the same in the same manner, and under the restrictions, made and provided relative to township roads."

This section is entirely inappropriate for obtaining any relief by way of damages or otherwise. When this act was passed there was no law which authorized the laying out or discontinuing of township roads. This was so held in *People v. Kimball*, 4 Mich. 95, as late as 1856.

In 1857 the Legislature passed an act relative to laying out and discontinuing highways in townships, and therein provided for a jury of 12 freeholders, to ascertain the necessity, and appraise the damage; and such continued to be the law until the amendment to the Constitution, doing away with a jury in cases of laying out and discontinuing roads by highway commissioners. But when the right of eminent domain is exercised by any other authority, the constitutional requirement of a jury is retained. There is now, therefore, no law by which a party aggrieved can have his damages and compensation ascertained by a jury when the board of supervisors lay out or discontinue a State road. By Act No. 179 of the Laws of 1887 an attempt was made to provide a remedy, but the Constitution requires a jury of twelve, and this act only provides for a jury of six. *Campau v. Detroit,* 14 Mich. 276.

The proceedings of the board of supervisors in discontinuing the road in question must be quashed, with costs.

SHERWOOD, C. J., MORSE and CAMPBELL, JJ., concurred. LONG, J., did not sit.