In the petition the following allegation is made:

"That petitioner's unmarried son, Spiridon Lykiardopoulo, was employed in the establishment conducted by the defendants jointly under a contract or agreement, the details of which are not known to your petitioner, but are well known to the defendants, upon whom your petitioner hereby calls for a production of any contract or agreement in writing which relates thereto, or any other information connected therewith, and while so employed was," etc.

The defendants were represented by the same counsel; and it is urged in argument that they are so closely allied and identified in business, if not actually amalgamated, as practically to be one and the same for all practical purposes. If the New Orleans & Carrollton Light & Power Company was not the employer of plaintiff's son, nothing could have been easier than for it to show that fact and set at rest all question on that score. Instead of so doing, it left the plaintiff and the court to grope in the dark. There is a good deal in the testimony and in the surrounding circumstances going to show that the New Orleans & Carrollton Light & Power Company was the employer, and it was to that company the insurance company which had insured the boiler made its report regarding the cause of the explosion on the day after the explosion.

After full consideration of the matter, we see no reason to doubt the correctness of the conclusion heretofore reached by us.

The judgment heretofore handed down by this court in this case is therefore reinstated in full, and as such affirmed.

---

(53 South. 578.)

### No. 17,628.

### LYKIARDOPOULO v. NEW ORLEANS & C. R., LIGHT & POWER CO. et al.

(April 25, 1910.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Demetrius Lykiardopoulo against the New Orleans & Carrollton Railroad, Light & Power Company and others. From a judgment for defendants, plaintiff appeals. Affirmed.

See, also, ante, p. 309, 53 South. 575.

Solomon Wolff and A. D. Danziger, for appellant. James Legendre and Edward Rightor, for appellees.

PROVOSTY, J. In the case of same title and bearing No. 17,191 (53 South. 575),[1] in which judgment was this day handed down against defendant, the appeal was taken by defendant. The present appeal was taken by plaintiff. For the reasons given in that case, the judgment in this case must be affirmed.

Judgment affirmed.

---

(53 South. 578.)

### No. 18,088.

### FRISCOVILLE REALTY CO. v. POLICE JURY OF PARISH OF ST. BERNARD et al.

(Oct. 31, 1910. Rehearing Denied Nov. 28, 1910.)

*(Syllabus by the Court.)*

1. STREET RAILROADS (§ 24*)—SALE OF FRANCHISE—STATUTORY PROVISIONS.

Act No. 48 of 1906 authorizes police juries to sell franchises for the operation of cars by electricity or motive power other than steam, on or across highways, and it applies to all highways, whether the right of servitude on or

[1] Ante, p. 309.

across such highways was acquired by expropriation or otherwise.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 24.*]

2. EMINENT DOMAIN (§ 119*)—"TAKING PRIVATE PROPERTY FOR PUBLIC USE."

A sale of a franchise by a police jury to a corporation to operate an electric car system over a public road is not a deprivation of property in the abutting owners, such as is prohibited by the Constitution. The use of such road by the public and abutting owners, however, must not be interfered with.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*

For other definitions, see Words and Phrases. vol. 8, pp. 6852–6860; vol. 8, p. 7813.]

3. STREET RAILROADS (§ 24*)—SALE—CONDITION PRECLUDING BIDDERS — VALIDITY OF SALE.

When a franchise is sold under Act No. 48 of 1906, it must be sold at public auction, and where the police jury incorporates such conditions in the franchise, so that in the natural course of things there will be only one bidder, a sale to such bidder will be void, for in effect it is a private sale, as there has been no possibility of competitive bidding as intended by the act.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 24.*]

4. STREET RAILROADS (§ 24*) — "ABUTTING" OWNER.

In the matter of public roads, the word "abutting" defined.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 1, pp. 50, 51.]

Appeal from Twenty-Ninth Judicial District Court, Parish of St. Bernard; R. Emmet Hingle, Judge.

Action by the Friscoville Realty Company against the Police Jury of the Parish of St. Bernard and others. Judgment for defendants, and plaintiffs appeal. Reversed.

Oliver S. Livaudais and Fred A. Ahrens, for appellants. Fernando Estopinal, N. H. Nunez, and McCloskey & Benedict, for appellees.

### Statement of Pleadings.

BREAUX, C. J. Plaintiffs brought this suit to enjoin the police jury of the parish of St. Bernard from selling a franchise for running an electric car over the road along the levee in front of their property.

The defendants furnished bond, setting aside the injunction, and thereafter the franchise was sold to the New Orleans Railway Company for $100. The distance of the franchise from a station known as "Uncle Alf's Station" is about 2,000 feet. Plaintiffs along the road covered by the franchise own property abutting on the road, measuring about 950 feet front.

The purchaser of the franchise has not taken actual possession.

The plaintiffs objected and protested at the time the property was offered for sale and sold.

After the adjudication, plaintiffs, by supplemental petition, made the adjudicatee, the New Orleans Railway Company, a party.

Defendants admitted the bonding of the injunction and the fact that the New Orleans Railway Company was the adjudicatee, but denied that it held the franchise by other than a legal and binding title.

Plaintiffs have introduced their respective titles in evidence.

They consist of title to three tracts, fronting on the Mississippi river. The upper line of the first of said tracts in the southernly direction is about 1,300 feet from the Orleans parish lines.

The Crescent City Stockyards & Slaughterhouse Company owns about 550 feet.

Mrs. Daumbre, 61 feet; Mrs. Traux, 61 feet; Mr. Ellis, 306 feet about.

The contention of plaintiffs is that this road never was dedicated to public use.

Furthermore, the contention is that, in case of nonuse in the future by the public as a road, it will revert to the owner of the land, as the condition of the servitude is that, in case the use is abandoned, the road will return to the actual ownership of the owners of adjacent lands, free from the right of servitude.

According to plaintiffs, under an ordinance of the police jury, another public road was opened in 1906, running back from the river at some distance and then across their property in order to connect communication with the main public road of the parish, and that this is the only public road of the parish on which traveling and traffic communication, between the upper and lower parts of the parish, exist.

That they cannot be made to furnish two public roads over their property.

Plaintiffs' charge is: That the object in selling the franchise and an extension already in use of the railway company was to obtain favorable votes of a majority of property holders, whose properties front on the extension, although they have no interest in the proposed extension, as the cars pass and have passed in front of their doors there the last 30 years. That their signatures should not have been considered in ascertaining the number of petitioners.

Plaintiffs' averment further is that the franchise was offered for sale in opposition to their protest.

Among the objections is that those passengers over the proposed railway are to be carried free of charge who had paid the usual fare; that is, the fare is not to be increased for riding over this new addition to the road.

Plaintiffs urge further illegalities on the grounds: That a public franchise cannot be sold over a road, although it is situated on the banks of a navigable stream. That such a sale is not covered by Act No. 48 of 1906, p. 63, under which defendant bought its franchise.

That the adjudication was null and void because it is in conflict with article 167 of the state Constitution, which ordains that private property shall not be appropriated nor damaged without compensation.

That the franchise providing for one fare from Canal street to the refinery is a special, personal provision in the interest of the railway company—it was, thereby, made the only possible bidder.

That the short distance over which this road is to run adds to the exclusive interest of the railway as the sole bidder. That there are no residents, save five or six, in the right of way, the only other passengers who might avail themselves of the advantages of the road—the number was virtually limited to the employés of the refinery.

Plaintiffs in injunction further allege that the American Sugar Refinery was not the owner of abutting property.

That the police jury was exclusively without power.

Plaintiffs claim as damages $10,000, as it cuts off their river front and permanently expropriates their property for a term of 99 years.

### Statement of the Case.

The facts are: That at first the public road began at Aycock street, which was the upper boundary of the parish.

In 1875 boundaries between Orleans and St. Bernard parish were in part changed.

The line of the latter was the Jackson Barracks, lower line. Aycock street from 1873 was not the lower line of Orleans parish.

A jury of freeholders was appointed to lay off another road back of the Louisiana Southern Railroad's right of way, being a continuation of St. Claude street of the parish of Orleans, rendered necessary in part because of the change in boundaries.

The jury of freeholders made their report and recommended the acceptance of the new road.

This was opened.

Afterward, another road was opened leading from the river and connecting the river road with the roadway last opened.

The Friscoville Company was grantor of the roadway from front to rear, and it is

now contended that by this concession or grant plaintiffs acquired a further right of restraining the use of the short road over which defendants claim a franchise by purchase, as before stated.

That plaintiffs had reason to believe, when the Friscoville Company gave a right of way for a new road and street car, that, if a franchise were sold, it would be a right of way or franchise over the last road mentioned above; that is, the road offered to and accepted by the police jury, as last above mentioned, the road running to the road connecting with St. Claude street.

## Discussion and Judgment.

In deciding the issues, we will state that the road along the levee in front is public. The changes before mentioned have not resulted in diminishing the right of the public over this road.

If it were not public, it would come within the prohibition laid down in Bradley v. Pharr, 45 La. Ann. 426, 12 South. 618, 19 L. R. A. 647, confidently cited.

The fact that it is public puts an end to all claims based on the cited decision.

We will state further, in this connection, the contemplated railway is for public use; it is not a private enterprise in the interest of a few, but a railway for the accommodation of the few persons whose residences are on the line of the road and of the many employés who repair from their homes to the refinery and return after the day's work, so that plaintiffs have no right to have it considered as an exclusively private enterprise.

The line is short. The employés walk the distance. It would, doubtless, be quite convenient to continue in cars to the refinery.

The necessity of making even the short distance in rain, mud, and cold cannot be agreeable.

It is an object in the interest of these employés to permit them to get to their work with dry feet.

Considered from this point of view, that is, the health and convenience of the men, the employer of labor, who feels properly toward his employés, will not fail to see to desired improvement if reasonably possible.

This projected street car extension was not to run through a lonely, deserted, rural district. There is a bank on the way. Such an institution is not a characteristic feature of a deserted country. There are dwellings and commercial enterprises. The cars will not pass through an unfrequented country.

It is not densely settled, but in time it may be, particularly if the road remains as a convenience to the employés and those who now dwell along the line.

One of the owners of large interests, who is interested as a defendant, testified that the road is in daily use; that it is the road over which he goes to his own home; and that wagons and footmen pass over it frequently.

On the score of usefulness and convenience to every one residing and having interest in the locality, the road is not only public; it is exceedingly useful.

To the question: Does Act No. 48 of 1906 contemplate the sale of a franchise over the roads acquired by servitude, arising from the provision of law? We can only answer that such is the expression of the statute. It authorizes the police jury to sell franchises on and across public roads and highways to operate thereon cars by electricity or motive power other than steam. Section first.

It applies to all public roads without regard to whether the right of servitude was acquired by expropriation or by any other mode authorized by law, provided always that it is a public road or highway.

The fact of expropriation does not add to the right provided in the act. The statute treats them all alike. Why should the courts

find a difference between the two—an expropriated road or a road over which there is a servitude of way without expropriation?

It is a well-settled principle, embodied in the Constitution, that private property shall not be taken nor damaged for public purposes without compensation.

Plaintiffs' premises do not fall within the provision made the basis of their argument on this point.

Private property has not been taken or damaged for public purposes.

The lawmaking power has not imposed a new use, nor has it sought to lessen the fee which is in the owners of abutting properties. Street electric railway is not a new burden, but is held to be a legitimate and proper use within contemplation of the original dedication.

The original dedication contemplated different methods of transportation which can be adopted, provided they do not interfere with the use of the street by adjacent owners or the public.

It is not in evidence that there is interference.

Our attention is invited by learned counsel for plaintiffs to the decision in Pumpelly v. Green Bay Co., 13 Wall. 181, 20 L. Ed. 557.

We are pleased with the principle it announces. It should be adhered to, for it recognizes a right in property which commends itself.

But that decision is different from the case before us. Its facts give rise to a different question.

In the cited case, real estate was actually invaded and made less valuable by having artificial structure placed on it so as to effectually destroy or impair its usefulness.

As we appreciate the issues in the case before us for decision, as relates to the value of property, instead of detracting therefrom, the proposed running of a motor car adds to its value and usefulness.

The testimony does not prove anything to the contrary.

As to the title itself, it is not illegally affected by the franchise over a public road.

To this point there is no ground upon which to grant the injunction prayed for by plaintiff. From this point it is different. The grounds of the injunction are sustained, as the franchise was illegally obtained.

Another plea of plaintiffs is that the franchise, granted on the condition that only one fare be charged from Canal street to the American Sugar Refinery, is for the exclusive benefit of the New Orleans Railways & Light Company, as none but this company can regulate such fare; they alone owning cars from Canal street to the starting point of the new franchise.

That under the regulations adopted for the franchise there could be only one bidder, and that bidder the said railways company.

This plea is fatal to the defense.

In order to pass upon this point, we turn to the statute cited supra. It authorizes the police jury to fix the terms and conditions of the franchise; to provide for its sale; to fix the terms and conditions.

The petition to the police jury by the property owners is that the fare charged shall be limited to five cents, and the condition in that respect is as above stated.

The ordinance of the police jury predicated on the petition provides as to the fare: That it shall not exceed five cents for a single trip in either direction, provided that all passengers transferred from the cars of the New Orleans Railways & Light Company, or occupying cars of said company going over the route as here described, having already paid their fare, shall be carried without further charge.

We have noted that the lawmaking power authorizes the sale of such a franchise at public auction to the highest bidder.

Under the conditions, there could be only

one bidder. There was room for only one, and it follows it became the adjudicatee.

There was no authority granted to sell at private sale, and for that reason it was not legally possible to sell the property at private sale under the guise of its being a public sale. The police jury went beyond its grant of authority in yielding to the petition of property holders of abutting property by selling the property to one bidder who was unavoidably to become the owner.

Why the empty formality of advertisement and public auction to make a private sale?

The fact that no one had ability sufficient or interest in this franchise other than the adjudicatee to offer to become its owner of itself renders the sale in character monopolistic and contrary to public policy, and as such null. Under the terms and conditions, there must be an offer made at auction, and that necessarily includes the necessity of leaving the purchase to competitive bidding.

It was not possible to impose the condition that another bidder would have to carry passengers over its line for nothing, or upon such terms and conditions as the railways and light company might choose to allow.

Over nine-tenths of the passenger traffic will be first on the railways and light company road and then on the contemplated road. No bidder will ever offer to buy a franchise for the, benefit of the railways and light company.

There was an absolute want of power to sell at private sale, and this sale was a private sale.

Considering the issues from whatever light, we always return to the one thought— a sale at public auction to only the one person by whom the purchase was made cannot be considered a public sale.

The act of the General Assembly cannot be construed as one authorizing the offering of a franchise at private sale.

An auction sale loses the characteristics of a public sale if conditions are inserted excluding all save one bidder.

The sugar refinery is not an abutting owner is one of plaintiffs' grounds.

This is another ground fatal to the defense.

In considering this point, we noted that the sugar refinery's property (one of the petitioners) is at the end and not along the road.

It follows that its owners have no interest in any part of the public road over which it is the contemplation to locate the car line. As we read the statute before cited, the owners of property have the right to sign, as they are the owners of one-half the abutting road; not so with the sugar refinery.

As the points just considered are fatal to the franchise claimed, we will not pursue the subject further.

The law and the evidence being in favor of plaintiffs in injunction, the judgment appealed from is annulled, avoided, and reversed; the injunction issued is perpetuated at cost of defendants; the costs of all courts to be paid by appellees.