242 P.2d 493

## CITY OF ROSWELL v. MITCHELL.
### No. 5423.

Supreme Court of New Mexico.

March 20, 1952.

O. O. Askren, Richard G. Bean, Roswell, for appellant.

James M. H. Cullender, Roswell, for appellee.

COMPTON, Justice.

This appeal involves the validity of an ordinance of the City of Roswell, relating to traffic in certain areas, providing for the use of parking meters in conjunction therewith, and providing penalties for violation.

The ordinance specifies that during certain hours, Sundays and legal holidays excepted, no vehicle shall be parked in an area designated by a parking meter unless a one cent coin or a five cent coin (amount determined by the length of time that parking is permissible in an individual parking space) be deposited in the meter. A fine may be imposed for a violation of the condition.

A single ground upon which the ordinance is alleged to be unconstitutional or otherwise invalid, is argued. The claim is made that the ordinance, by reason of the fee charged, is a revenue measure.

Evidence was admitted as to the meter intake covering a period from January 1,

1949, to July 1, 1950. During the calendar year 1949, there was a gross revenue of $29,360.32. For the first half of 1950, the gross revenue was $17,854.54. Covering the over-all period there were penalties of $6,715. From these facts, appellant contends that the evidence clearly shows that the ordinance is not a regulative measure, but rather a disguised system of unlawful taxation. Standing alone, these facts would tend to support the contention, but there is another side to the picture. The expenses of installation, maintenance, cost of traffic regulation, etc., are matters of consideration. Originally, installation cost is shown to be $11.36 per meter. It is now in excess of $40 per meter. About 80 per cent of the meters require repairs annually. A supervisor and a repairman are employed at a monthly salary of $240 each. Motor cycles, costing about $1,000, used in connection with the regulation, must be replaced every two or three years. It also appears that, due to recent replacements, there is now owing by the city the sum of $14,000. Obviously, the plan goes little further, if any, than to provide for future contingencies and adequate service. The excess, though impressive, is consistent with a sound fiscal policy.

The policy of installing meters is a matter solely for the city, unless it has acted arbitrarily or fraudulently, and such exercise does not appear from the evidence. To the contrary, the parties agree "that on Main Street and the streets set forth in the ordinance, the area, the restricted area, there was a congestion caused by over parking," and the purpose of the ordinance is declared in the following language:

"Whereas, the occupancy by vehicles and motor vehicles on the public streets of Roswell for parking purposes, and the use of vehicle and motor vehicles for such purposes, and the exclusive privilege thereby appropriated during such occupancy, require the exercise of the governmental powers of Roswell for the regulation thereof for the purpose of relieving traffic and street congestion, prevent the abuse of parking privileges, increasing parking privileges for a greater number of citizens, accelerating the free movement of traffic, and, as part of the municipal traffic system, promoting public safety and convenience; and,

"Whereas: the requirement of a fee for such occupany, use and privilege aforesaid, and the installation of parking meters for collection and time measurement of such fee, are necessary, together with related limitations of parking, for the accomplishment of the governmental powers aforesaid; and such fees are necessary and applicable for the purchase, installation, maintenance and renewal of such system of parking meters and the cost of street traffic regulations and the enforcement and control thereof, and the supply and main-

tenance of adequate service therefor: * * * ".

Municipalities are authorized to lay out streets and regulate traffic thereon. Section 14–1805, 1941 Comp. Also, municipalities are authorized to enact ordinances not inconsistent with the laws of the State and to enforce obedience thereof by fine or imprisonment. Section 14–2201 1941 Comp. Thus, the power to regulate, is granted in express words.

 "The power to regulate the use of the streets is a delegation of the police power of the state government and whatever reasonably tends to make regulation effective, is a proper exercise of that power." McCulloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579. Consequently, a municipality may legally charge a fee to execute an express power. The power to regulate "justifies the charge of a fee and the imposition of the penalty, and the regulative measure is not invalidated because, incidentally, the city's receipts of money are increased." City of Buffalo v. Stevenson, 207 N.Y. 258, 100 N.E. 798, 800; Ex parte Duncan, 179 Okl. 355, 65 P.2d 1015; In re Opinion of the Justices, 297 Mass. 559, 8 N.E.2d 179; Ex parte Harrison, 135 Tex. Cr.R. 611, 122 S.W.2d 314; Cassidy v. City of Waterbury, 130 Conn. 237, 33 A.2d 142; Hickey v. Riley, 177 Or. 321, 162 P.2d 371.

The use of parking meters as a means of regulating traffic has been generally approved by the courts—in 24 jurisdictions. As we read the cases, only five states hold to the contrary and three of these, by reason of the lack of charter provisions or legislative authority. See annotations in 108 A.L.R. 1152, and 130 A.L.R. 316, where many of the cases are collected.

We conclude that the ordinance was enacted primarily as a traffic regulation and not for the revenue incident thereto. The judgment is affirmed, with directions to the trial court to reinstate the case upon its docket and enter judgment against appellant and the sureties upon his supersedeas bond, and it is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COORS, JJ., concur.