**287 P.2d 77**

**PHILLIPS MERCANTILE COMPANY, a copartnership composed of Phillip Friedman, Jenny Friedman, Irving Friedman, and Jerald Friedman, Plaintiffs-Appellees,**

v.

**CITY OF ALBUQUERQUE, a Municipal Corporation, Coca Cola Bottling Company, a Corporation, Carlos Soto and Tillie Soto, his wife, Defendants-Appellants.**

No. 5889.

Supreme Court of New Mexico.

July 29, 1955.

Rehearing Denied Sept. 12, 1955.

Frank L. Horan, Albuquerque, for City of Albuquerque.

Rodey, Dickason, Sloan, Mims & Akin, John D. Robb, John P. Eastham, Albuquerque, for Coca Cola Bottling Co. and the Sotos.

Rueckhaus & Watkins, Chester A. Hunker, Albuquerque, for appellees.

COMPTON, Chief Justice.

This case brings before us several questions having to do with the rights of one whose property lies at the end of a "dead-end" alley upon vacation of the alley by the municipality, as well as questions relating to the validity of the proceedings had. In addition, there is the question, relating alike to substance and procedure, whether the title to streets and alleys is vested in the municipality in absolute, unqualified fee simple (thus bringing streets and alleys under statutory provisions for disposition of municipal properties not being used strictly in the carrying out of an essential governmental function, § 14–4301, et seq., 1941 Comp., § 14–47–1 et seq., 1953 Comp., prior to amendment) or whether the city's ownership is an estate in fee, but limited to the use of the public, so that upon vacation of a street or alley the estate passes in reverter to the owners of property along the sides of the public way.

The following sketch is utilized to describe the location and ownership of property contiguous with or adjoining the controverted alley, Bratina Road:

Bratina Road, a sixteen-foot wide alley, was originally shown on the plat of Brooks Subdivision of Bratina Addition No. 2, filed in 1922. Some two years later the plat of Commercial Addition was filed with Lot 13 and a small portion of Lot 14, Block 5, thereof, causing Bratina Road to become a cul-de-sac, or dead-end way. The defendant Coca Cola Bottling Company owns the property immediately on the left or west side of the alley and the defendants Carlos Soto and Tillie (Domitila) Soto, husband and wife, own and have their home upon the property on the east or right side. When the alley was first sought to be vacated by these defendants in February, 1952, the property to the south, or at the end of the alley was owned by Louis Giacomelli, being Lots 12 and 13 of Commercial Addition. The plaintiffs, Phillips Mercantile Company, a copartnership, owned adjoining lots in Commercial, being Lots 9, 10 and 11. They also owned a right-of-way across Lots 12 and 13 to the alley, but never made use of it. In fact, the only use made of the alley during the years the Sotos and the bottling company owned their property there was that occasionally Soto or some of his family used it for access to the west side of his property.

There is no question but that the physical condition of the alley was one of exaggerated filth. From time to time the city would delegate workmen to clean it, a difficult job because the alley was so narrow there was not room enough for the trucks or other vehicular cleaning equipment to be turned around in it. Anyone using the alley in a truck or car would have to either back in or back out. After the alley was cleaned it would soon fill up again with every sort of refuse. The defendant owners attempted to clean it on occasions, and the bottling company had at times covered it with lime to keep down odors.

So, in February, 1952, the defendant owners petitioned the City Planning Advisory Board to vacate Bratina Road. This board, after investigation, and after protest was made to the vacation of the alley by Giacomelli, recommended that the alley be not vacated, which recommendation was sent by letter to the City Manager of Albuquerque.

Being dissatisfied, the defendant owners submitted a petition in the latter part of September, 1952, to the City Commission of Albuquerque that Bratina Road be vacated. One of the principal disputes on this appeal, as at the trial, hinges on whether Giacomelli and the plaintiff company, which acquired Lots 12 and 13, Commercial Addition, on September 24, 1952, were given notice of the proceedings before the City Commission and opportunity to be heard. It is undisputed that a few days prior to the last mentioned date one of the officials of the bottling company went to one of the plaintiffs and advised him the bottling company and the Sotos planned to continue their efforts to have the alley vacated.

On September 23, 1952, the City Commission considered this petition and unanimous-

ly passed Commission Ordinance No. 817, closing and vacating Bratina Road and directing the chairman of the commission and the City Clerk to execute quitclaim deeds conveying one-half of the alley, respectively, to the defendant owners. The ordinance recited that the alley was "not needed and (was) of no value and the repair and maintenance of the same would be burdensome and in excess of the benefits therefrom;" and further recited, "the continued maintenance of said alley as a public way is contrary to the best interests of the City of Albuquerque and the vacation of the same would remove an unhealthy, unsafe and undesirable condition to the advantage of the City of Albuquerque and of the public." Neither the plaintiffs nor Giacomelli appeared at the meeting of the commission.

Although the plaintiffs knew the alley was the subject of controversy prior to the time they began negotiations for the purchase of the Giacomelli lots, some fourteen days before the passage of the ordinance vacating the alley, they contracted with a firm of architects to draw plans for a building to be placed on the lots they contemplated buying. They did purchase the lots, as above noted, on September 24, 1952, a day after the passage of the ordinance in question. Then, after the plaintiffs had actual knowledge of the passage of the ordinance, they entered into a building contract for the construction of a wholesale grocery warehouse upon the lots so purchased. The warehouse, as later erected, had two large doors on the front,

accessible to Marquette Ave., and one smaller door in the rear of the building opening onto the former alley. It was the intention of the plaintiffs to use the loading doors on the front, or Marquette side of the lot, for the operation of unloading large trucks coming in, while it would use the small door on the rear at the alley to load smaller trucks going out for local delivery.

At about the time the contract for the building was let, the plaintiffs filed this action to set aside the vacation of the alley and to have the deeds which had been issued to the defendant owners declared void. That portion of the plaintiff's complaint which sought the recovery of damages was dismissed upon defendants' motion therefor, so there was no issue as to damages.

The case was tried to the court which entered judgment declaring the ordinance was invalid and the deeds issued thereunder were void.

The findings and conclusions of the trial court are assembled in summary form as follows:

A. That Bratina Road was an important means of access to plaintiffs as owners of Lot 13; that the term "abutting owner" means adjoining owner, even includes owners who have a right to use the way in a manner different than that enjoyed by the general public; that the plaintiffs by being deprived of an important means of access have been deprived of a property right without the due process of law and without just

6

compensation therefor; that neither the plaintiffs nor their predecessors in interest were notified or had an opportunity to object to the passage of the ordinance, an emergency measure; that the action of the commission in passing the ordinance was capricious and an unreasonable exercise of its power.

B. That the City of Albuquerque has adopted the "Master Plan" under the provisions of § 14–2–14 to § 14–2–33. 1953 Comp. so far as the planning of streets and alleys is concerned; that power to initiate street or alley changes under the "Master Plan" system is exclusively delegated to the City Planning Commission; that under the rules and regulations of the City Planning Commission, notice and opportunity to be heard are provided to be given to each interested party—that the plaintiffs had this right before the City Commission of Albuquerque, too; that the City Commission acted in a "quasi-judicial" capacity in reviewing the action of the City Planning Commission.

C. That the title of Bratina Road became vested in fee in the city upon the dedication thereof in 1922; that title has not been divested as provided in § 14–4301 et seq., 1941 Comp., then in effect, now, as amended, § 14–47–1 et seq., 1953 Comp.; that the city had no power to sell this property except under the procedure outlined in § 14–4301 et seq., 1941 Comp., and the sale is void and without consideration; that the only consideration paid by the defendants to the city for the property deeded to them was the cost of publication of the ordinance, which did not make the conveyance a sale; that the ordinance combining a vacation of an alley for public need with the grant of the land to private individuals is self-contradictory and unreasonable, and, therefore, void.

The first of the points raised by defendants on their appeal asserts the lower court erred in ruling that title to Bratina Road became vested in fee in the city upon dedication so that the city obtained complete ownership of the land on which the road was located. In this connection, our statutes read:

"Dedication for streets or other public uses.—The acknowledgment and recording of such plat shall operate as a dedication to the public use of such portion of the premises platted as is on such plat set apart for street or other public use. § 14–2–4, 1953 Comp.

"Areas dedicated for public use—Fee vests in municipality.—All avenues, streets, alleys, parks and other places designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property and the fee thereof be vested in such city or town." § 14–2–5, 1953 Comp.

In an unusually able brief, the defendants invoke several familiar principles of statutory construction: First, that statutes in pari materia with the statute being construed must be considered. Here appellants direct our attention to § 14–2–8, 1953 Comp., which provides in substance for the vacating of plats, first by the proprietors of the plat before any lots therein are sold, and second, by the owners of lots in the plat joining in the instrument vacating the plat where lots have been sold. This section further provides when any part of the plat is vacated the proprietors of the lots so vacated may enclose streets and alleys adjoining the lots in equal proportion. It is argued by defendants that this section would be rendered meaningless if § 14–2–4 and § 14–2–5 were correctly construed by the trial court.

Second, it is urged that statutes in derogation of the common law are to be strictly construed, citing Guiterrez v. Gober, 43 N. M. 146, 87 P.2d 437, and other New Mexico cases.

Third, we are directed to the rule that the contemporaneous construction placed upon a statute by the officers or departments charged with its execution is to be given weight by the courts in construing the statute. The sections under consideration are old ones. Section 14–2–4 was enacted in 1889 and § 14–2–5 in 1884. Defendants' research discloses that over the period from January, 1943, to February, 1954, 101 vacating ordinances were enacted in Albuquerque, each providing for issuance of deeds to abutting property owners. In all but a very few instances, no form of consideration was given for the deeds issued, and where consideration was recited it was either a token of one dollar, or it appeared that other property had been exchanged for the vacated property.

Finally, there is cited to us the case of City of Leadville v. Bohn Mining Co., 37 Colo. 248, 86 P. 1038, 1040, 8 L.R.A.,N.S., 422, where a statute identical with § 14–2–5 was construed. There the city was trying to regain possession of the land underlying a street and to restrain the defendant from mining there and extracting ores. The Colorado Court said:

"* * * we think it clear that the Legislature intended by the use of the term 'street' to vest in the city such estate or interest as is reasonably necessary to enable it to utilize the surface and so much of the ground underneath as might be required for laying gas pipes, building sewers, and other municipal purposes. In other words, the Legislature used the term 'fee,' not according to its technical legal meaning, but as vesting in the city a complete, perpetual, and continuous title to the space designated as streets, so long as it used them for the purpose intended. (Citing cases.)

\* \* \* \* \* \*

"It seems clear to us, therefore, that the intent and purpose of our statute is

to clothe the city in its governmental capacity with the entire title to the streets, as such, for public use, and not for the 'profit or emolument of the city.' It was plainly the intention of the dedicator to part with the title to so much of its property only as was necessary to effectuate the purpose of establishing certain streets and alleys designated and described upon the plat for public use, and to clothe the city with the absolute title thereto for that purpose only, and not to vest it with any estate or interest in the ores that may exist thereunder. The cases cited by counsel for appellant are based upon statutes that expressly provide that a statutory dedication shall vest the fee to the 'land,' 'ground,' or 'premises' donated for streets or other public uses in the municipality, and therefore are not applicable to a dedication under our statute which, as we have seen, vests the fee in the 'streets' as such."

We entertain no doubt that the sections under consideration do not purport to give to municipalities an absolute fee simple estate in the streets and alleys, and the land underlying them. While all of the argument of defendants has been most helpful in the general consideration of this problem, the statutes in question themselves contain the answer. As noticed by the Colorado Court, the statute, § 14–2–5, speaks of avenues, streets, alleys, etc. It does not speak of the ground or the land. More compellingly, at least in the case of public ways, this section and the one immediately preceding it speak of *public use*. Section 14–2–4 provides the acknowledgment and recording of the plat operates as a *dedication to the public use* of the portion set apart for street or other *public use*. We are of the opinion that so long as there exists a public use for such dedicated streets, the city is given an absolute estate therein, and is similarly unlimited in the use of the sub-soil for its governmental operations. But, when a city has determined a street is no longer of public use, it has the right to be disencumbered of it; and when the use upon which the dedication was made is exhausted, the dedicators or their successors in interest have the right to be restored to their estate in the formerly dedicated property.

Therefore, the procedure outlined in § 14–4301 et seq., 1941 Comp., making provision for the sale or leasing of municipally owned property not used strictly for governmental functions, is neither appropriate or applicable to vacated streets and alleys.

We now pass to a consideration of defendants' argument the trial court was in error in ruling the City Commission of Albuquerque was bound procedurally by the Planning Commission Act, § 14–2–14 to § 14–2–33. This act authorizes and empowers the municipalities of this state to create by ordinance a planning commission with such powers, authorities, jurisdiction and duties as are described in the act and as are in-

cident and necessary to carry out its purposes.

Briefly summarized, the act provides the planning commission shall be composed of not less than five members appointed by the mayor and confirmed by the council or governing body of the municipality; that they shall serve for terms of two years, under system of overlapping tenure. The planning commission has the duty of making and adopting a master plan for the physical development of the municipality. The purpose of the plan is to promote coordinated and harmonious development of the municipality in view of existing and future needs.

It is provided before adoption of the master plan the planning commission shall hold a public hearing, after having given fifteen days advance notice by publication of the time and place of said hearing. Then, by resolution referring expressly to the maps, descriptive matter, etc., intended to form the whole or part of the master plan, passed by not less than a majority of the commission members, the plan is adopted, and a copy thereof shall be certified to the municipal council.

■ The question whether the City of Albuquerque has gone under and accepted the Planning Commission Act, and whether a Master Plan has actually been adopted is important because of the trial court's conclusions that power to initiate street or alley changes under that system is exclusively

delegated to the City Planning Commission; that the City Commission of Albuquerque acted in a quasi-judicial capacity in reviewing the action of the City Planning Commission; and that since the rules of the City Planning Commission provide for notice and opportunity to be given each interested party, the plaintiffs had this right before the City Commission as well. It would unduly lengthen this opinion to set out the statutory declaration of the legal status of the Master Plan when adopted, therefore, reference is made to the act in general, and § 14–2–22 thereof in particular.

Now, when we come to examine Commission Ordinance No. 630, relied upon by plaintiffs to show the City of Albuquerque has brought itself under, and has adopted, a master plan of development, we find first that it is entitled:

"An Ordinance relating to City Planning, Creating a *City Planning Advisory Board,* authorizing the City Commission to adopt Rules and Regulations governing subdivisions of land within said commission's planning and platting jurisdiction and declaring an emergency." (Emphasis ours.)

Omitting matter having to do with the making of rules and regulations by the City Commission governing subdivision of land in its platting jurisdiction, and the emergency clause, the ordinance and recitals therein read as follows:

"Whereas, in the judgment of the City Commission of Albuquerque, New Mexico; it is deemed advisable that careful and comprehensive surveys and studies of the existing conditions and probable future growth of the municipality and its environs be made and that a master plan be *formulated* with the general purpose of guiding and accomplishing a coordinated, adjusted and harmonious development of the municipality, which will, in accordance with existing and future needs, best promote health, safety, morals, order, convenience, prosperity, or the general welfare, as well as efficiency and economy in the process of development, and

"Whereas, *it has been considered by said Commission that certain aspects of Chapter 204 Laws of New Mexico 1947 (Planning Commission Act) render full compliance with said Statute inadvisable at this time* and

"Whereas, a board of citizens of said City as hereinafter provided for will afford a body which can objectively *study* the problem of municipal planning

\*     \*     \*     \*     \*     \*

"Now, therefore, be it ordained by the City Commission of Albuquerque, New Mexico:

"Section 1: That there is hereby created a *City Planning Advisory Board* composed of seven residents of the City of Albuquerque, New Mexico, nominated by the Chairman of the City Commission and approved by the City Commission to serve for a period not exceeding one year from the effective date of this Ordinance, but which board *may* be *dissolved upon the filing of its final report* which said board is charged with the *investigation and study of the subject of municipal planning and the formulation of a master plan.* \* \* \* It shall \* \* \* *initiate a study* of municipal planning and of existing statutes, ordinances, and other regulations together with a general study of the present condition of said municipality as regards city planning. Said board shall file with the City Manager a report of its findings, deliberations and recommendation as soon as practicable and in any event shall file at least an interim report with the City Manager prior to the convening of the 19th regular session of the Legislature of the State of New Mexico. \* \* \*" (Emphasis ours.)

It is impossible for us to see how this ordinance can be interpreted to be anything more than one creating an advisory board to investigate, study and file a report on the subject of municipal planning and the formulation of a master plan. The ordinance itself recites full compliance with the Planning Commission Act was then deemed in-

advisable. The name of the body created is not "city or town planning commission" as specified in § 14–2–15, 1953 Comp., but is "City Planning *Advisory* Board." Its members serve only one year, while the act specifies terms of two years, with over-lapping tenure. But the matter is finally settled by the fact the board is given authority only to investigate, study and report, and to *formulate* a master plan, by the most liberal construction. Nowhere is there any empowering of it to *adopt* a master plan after notice and hearing, and in the face of the recital the city was not fully complying with the Planning Commission Act, it cannot be argued such power is implied.

The only other proof regarding this matter was the testimony of the City Clerk, Ida Malone, and the Executive Secretary of the City Planning Advisory Board, Helen Brown. The City Clerk testified there was a planning commission still functioning under the ordinance described above. She thought the chairman of the commission was Mr. Oestreich, but could name no other members. In response to a question whether the planning commission had jurisdiction over certain matters pertaining to subdivisions and streets, Ida Malone answered, "Yes, sir." Nor do we find anything more substantial in the testimony of Helen Brown. She testified the "planning commission" was merely a recommending body, and she "assumed" that the City Commis-

sion had the final say on requests to vacate streets or alleys.

■ In our opinion there was simply no substantial evidence before the trial court to warrant its finding the City of Albuquerque had adopted the master plan so far as planning streets and alleys were concerned, so that it was bound by the provisions of the Planning Commission Act.

By § 14–21–5, 1953 Comp., municipalities are given the power "To lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, parks, and public grounds, and vacate the same," and by § 14–25–1, 1953 Comp., they are given power to "make and publish, from time to time, ordinances not inconsistent with the laws of the state for carrying into effect or discharging the powers and duties conferred by law, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience of such corporation and the inhabitants thereof." For cases illustrative of the various facets of municipal powers in this connection, see City of Roswell v. Mitchell, 56 N.M. 201, 242 P.2d 493; Oliver v. Board of Trustees of Town of Alamogordo, 35 N.M. 477, 1 P. 2d 116; City of Roswell v. Bateman, 20 N. M. 77, 146 P. 950, L.R.A.1917D, 365.

There remains for our notice but one further aspect of this case: Whether the

plaintiffs have been deprived of a substantial property right without due process of law. The defendants' attack upon the holding of the trial court to that effect is twofold: first, that the plaintiffs have not been deprived of a *substantial* property right; and, second, that since the passage of an ordinance vacating an alley is a legislative rather than a judicial act, due process does not require notice and opportunity to be heard, so long as the matter is subject to review by the courts in some manner, citing City of Roswell v. Bateman, supra. Alternatively, it is argued that if notice is required, it was given by the act of one of the officials of the bottling company informing one of the plaintiffs that vacation of Bratina Road was still being sought, some few days before the petition therefor came before the City Commission. In the view we take of the case it is not necessary to consider this latter argument.

■ As to the contention that in the absence of statutory provision, no notice to interested and affected owners is required for the validity of a vacating ordinance, we believe the best statement of general principles is to be found in 1 Merrill on Notice (1952 Ed.) § 543, where it is said:

"A common test for the implication of a right to notification in administrative proceedings has been the nature of the action to be taken. If it is 'judicial' in nature, the necessity of hearing upon notification is implied. If, upon the other hand, it is 'legislative' in nature, involving a determination of policy rather than an adjudication of rights, courts decline to imply a right to notification in the absence of a statutory command. This last statement is not of universal application, however, as there are a number of cases in which the courts have implied a right to notification in connection with administrative acts which under this test, properly would appear to be classified as legislative in character. These include the division of a borough; the prescription of public utility rates, as against patrons; the alteration, discontinuance or opening of a highway."

■■ In Pearsol v. Board of Supervisors, 71 Mich. 438, 39 N.W. 578, 581, cited in support of the above material as to discontinuance of a highway, it is said:

"* * * I am not prepared to concede that the action of the board of supervisors in laying out or discontinuing a state road is so purely of a legislative character as to dispense with the safeguards of the constitution for the protection of private rights, nor with notice to parties directly interested and affected by the proceeding required to bring such proceedings within the requirements of due process of law. * * *"

A different, and we think a better, exposition is made in the scholarly opinion of Justice Blume in Thomas v. Jultak, 68 Wyo. 198, 231 P.2d 974, 979, in a case closely paralleling the present one:

"The last mentioned section does not provide for any notice to be given to property holders when it is proposed to vacate any street or alley. The vacation of public streets and highways is essentially a legislative function. It is therefore a plenary and absolute power, subject only to constitutional limitations, and it may be delegated to the state's municipal divisions, Con Realty Co. v. Ellenstein, 125 N.J.L. 196, 14 A. 2d 544; Elliott on Roads and Streets (4th Ed.) Section 1182. We think, accordingly, that so far as jurisdiction is concerned no notice needs to be given to a property holder. 4 McQuillin on Municipal Corporations (Rev.Ed.) page 368; 39 C.J.S., Highways, § 120, p. 1055; Dempsey v. City of Burlington, 66 Iowa 687, 24 N.W. 508; Roberts v. City of Detroit, 241 Mich. 71, 216 N. W. 410, 412; Village of Bellevue v. Bellevue Improvement Co., 65 Neb. 52, 90 N.W. 1002; Baudistel v. Michigan Central R. Co., 113 Mich. 687, 71 N.W. 1114. * * *"

But this assertion is not as sweeping as it might appear, and in subsequent statements in the opinion, the Wyoming Court takes a position substantially consistent with that noted from the Pearsol case, to-wit: That the action taken must still accord with the constitutional guarantee that no person shall be deprived of property without due process of law and just compensation; and, if a substantial property right has been taken, one deprived thereof has standing to protest the action under review by the courts. It is said in Thomas v. Jultak, supra:

"The right to vacate a street or alley is, of course, subject to constitutional limitations and it is contended by counsel for the plaintiffs that if Section 29–2004 supra (the Wyoming statute giving municipalities power to vacate streets, etc.) is applicable, it is in violation of * * * the Wyoming Constitution providing that: 'No person shall be deprived of * * * property without due process of law,' and * * * 'Private property shall not be taken or damaged for public or private use without just compensation.' And it is probable that in some instances of the vacation of streets or alleys, these constitutional provisions would be applicable and that the foregoing statutory provision might in such cases without further provisions providing for the assessment of damages be held to be unconstitutional. But, of course, it depends altogether upon the fact as to whether or not property of the plaintiffs has in fact been taken or damaged. If it has not, then plaintiffs cannot raise

the constitutionality of the statutory provision above mentioned. * * * In the case of Roberts v. City of Detroit, 241 Mich. 71, 216 N.W. 410, 412, already cited above, the court stated: 'From a review of the above and other authorities, the controlling element seems to be this: *If the vacating or changing is of such a character that it deprives any abutting owner of a substantial right appurtenant to his property, resort must be had to due process of law incident to the exercise of eminent domain; but, if it clearly appears that the proposed change in vacating a portion of an alley is to be brought about in such a manner that it does not deprive an owner of any substantial right appurtenant to his property, such change can be made as a matter of right by the municipality because the control of the streets and alleys is vested in the municipality* by the Constitution, and in this instance also by the city charter.' And it is said in 29 C.J.S., Eminent Domain, § 243, p. 1214: 'persons whose interest in the land taken is insufficient, or whose land is not sufficiently affected by the taking, are not entitled to notice.' * * *'' (Emphasis ours.)

█ We have left, then, the key question of this appeal: Whether or not prior to its vacation the plaintiffs and their predecessors in interest enjoyed a substantial right in the use of and access to Bratina Road. We have examined many cases where the rights of owners similarly situated are analyzed. The various questions influencing decision one way or another may generally be stated to be: What is the function of an alley as opposed to a street? Is the property of the objecting owner within or without the same platted subdivision? Is it within the limits of the municipality? Who bears the burden of assessment for improvements and maintenance? And, of course, the very general inquiry, is there independent means of access to other streets and highways—in this connection see Mandell v. Board of Com'rs of Bernalillo County, 44 N.M. 109, 99 P.2d 108.

It is reasoned in various cases, Friscoville Realty Co. v. Police Jury, 127 La. 318, 53 So. 578; Kirby Terminal Co. v. City of Detroit, 339 Mich. 155, 63 N.W.2d 601; Campbell v. City of Glendale, Mo.App., 211 S.W.2d 519; Kings Highway Supply Co. v. Banner Iron Works, 266 Mo. 138, 181 S.W. 30; Lee v. City of Stratford, 125 Tex. 179, 81 S.W.2d 1003; Thomas v. Jultak, supra,— to name but a few, that an alley differs from a street in that alleys are intended primarily for the benefit of and local convenience to the parts of the block upon which they immediately abut, and are not thought of as a part of a system of connecting highways; that owners in one subdivision cannot object to the vacating of a cul-de-sac alley or street wholly within the limits of another

subdivision—that each plat stands by itself; and that as the burden of assessments for improvements and maintenance is borne by the contiguous abutting owners rather than the "dead-end" owner, the latter has no standing to object.

While all of these considerations are persuasive, the element which swings the balance is that to permit someone situated as the plaintiffs are to have the vacation annulled is to allow him not to have continued access to a right which he shares in common with the public, though to his greater or special benefit,. but to accord to him a right private and exclusive to himself.

Light is cast upon this proposition in the opinion in Thomas v. Jultak, supra, so often adverted to by us. Thomas owned several lots abutting along the side of a dead-end alley. The property of Jultak intervened between Thomas' property and that of the Wyott Manufacturing Co., the property of the latter being immediately west of the west boundary of the city and forming the dead-end of the alley. Thomas was the president of the manufacturing company and for some time his lots on the alley had been devoted to the use of the manufacturing company, especially as a parking area for plant employees, and there being a warehouse thereon which was rented to the manufacturing company. Upon petition of Jultak's predecessor in interest, the city vacated the alley and Jultak denied Thomas and the manufacturing company access through the alley. We quote the following from the opinion unholding the vacation of the alley:

"We pass then to the rights of the manufacturing company. The case before us becomes clearer when we do so. *The public would have no legal right to cross the boundary into the cul-de-sac from the side of the manufacturing company.* That clearly would be trespassing unless consent were given since private property would first have to be crossed, as may be noted by examining the map. A public right, such as here considered, cannot ordinarily be created by consent of a private party. Long usage giving rise to prescription, or filing a plat by which streets and alleys are dedicated seem to be exceptions. These factors are not involved herein. If then the manufacturing company, and the latter alone had the right to cross the boundary from its side, then it again may well and rightly be argued that the cul-de-sac is converted from a public into a private right-of-way, which would not, we think, be permissible under the facts disclosed herein.

\*  \*  \*  \*  \*  \*

"\* \* \* The cul-de-sac is not designed or intended for travel or traffic beyond the end thereof. The party, at

its beginning or opening, is not in the ordinary case interested in its being open beyond him, except perhaps insofar as the public in general is interested in reaching the property of the party further on inside of the cul-de-sac. We hardly think we should be asked to hold that this case should be considered as an exception merely because the end of a cul-de-sac happens not to be fenced or closed by a wall or building at its end, and because plaintiff Thomas happens accidentally to be interested in the plaintiff manufacturing company. The ordinary mode of travel and traffic in the case of the existence of a cul-de-sac as in the case at bar is by the existing streets. Any other mode of travel and traffic would be extraordinary and we hardly think that we are warranted in saying that plaintiffs are entitled to that extraordinary mode. * * *" (Emphasis ours.)

There is some authority which appears at first to be to the contrary: Johnson v. Town of Watertown, 131 Conn. 84, 38 A.2d 1; Messinger v. City of Cincinnati, 36 Ohio App. 337, 173 N.E. 260. But, upon examination, it is seen that in the first of these cases it was held an owner could enforce a right of access to a public way running to and ending at his property—there the way was in existence and was not sought to be vacated. In the second of the cases by statute notice was required to be given to abutting owners upon proposed vacation if all such owners had not consented to the vacation, and the owner at the end of the alley was held to be an abutting owner and entitled to the statutory notice. These cases are, therefore, distinguishable from the one before us, and it is our holding the plaintiffs have not been deprived of a substantial property right without due process of law.

The case is reversed and remanded to the lower court with direction to enter judgment for the defendants. It is so ordered.

LUJAN, SADLER, McGHEE and KIKER, JJ., concur.