523 P.2d 540

**Lewis B. WHEELER et al., Plaintiffs-Appellees and Cross-Appellants,**

v.

**Carl P. MONROE et al., Defendants-Appellants and Cross-Appellees.**

**No. 9800.**

Supreme Court of New Mexico.

June 28, 1974.

Nordhaus, Moses & Dunn, Leonard G. Espinosa, Stuart C. Hines, Albuquerque, for appellants.

Turpen, Hunt & Booth, Tandy L. Hunt, Albuquerque, for appellees.

PER CURIAM:

Upon consideration of motion for rehearing the opinion heretofore filed herein is withdrawn and the following substituted in lieu thereof:

OPINION

McMANUS, Chief Justice.

Plaintiffs brought a suit in ejectment against defendants Reid, Clayton, Constant, Parrish, Monroe, Bernardoni, Bauer and Shaffer. The purpose of the suit was to eject these defendants from certain real property which had previously been dedicated by plaintiffs in the original Altiplano Addition plat to the City of Albuquerque as a park. This property, after non-use as a park, was sold by the City of Albuquerque to a local contractor, H. B. Stasey, on September 8, 1964. Stasey subdivided this land into seven lots which, with houses thereon, were sold to seven of the defendants. The defendants have resided in these houses from the date of their purchase, with the exception of defendants Constant and wife who sold their home on

a real estate contract to defendants Parrish and wife.

The case was tried to the court without a jury, resulting in a judgment in favor of the plaintiffs for the value of the property and for the mesne profits. Defendants appeal from this judgment. Plaintiffs cross-appealed concerning the offset allowed defendants for their improvements.

Defendants urge a number of points on appeal to support their request for a reversal of the trial court's decision. We deem that the following points are dispositive of the case.

Defendants Reid, Clayton, Constant and Parrish, and their respective wives, in their brief contend:

"Plaintiffs divested themselves of all rights, title and interest of all the streets and the park in the Altiplano Subdivision upon platting and approval by the City of Albuquerque and the City became owner in fee simple absolute of the dedicated streets and park."

Defendants Monroe, Shaffer, Bernardoni and Bauer, and their respective wives, raised the following point in a separate brief:

"Plaintiffs have no right to possession because the dedication of Altiplano Subdivision operated as an absolute gift of the disputed property to the City of Albuquerque, reserving no future interest in the plaintiffs."

The plat of the subdivision including the land which is the subject of this suit was filed with the City in June 1952, and reads as follows:

"The above and foregoing subdivision * * * [metes and bounds description], comprising BLOCKS 1 to 6, inclusive, a Public Park, with several public thoroughfares and a drainage easement shown thereon, of ALTIPLANO, a Subdivision, Albuquerque, New Mexico, is with the free consent and in accordance with the desires of the undersigned owners and proprietors thereof, and said owners and proprietors do hereby dedicate easements shown on the Plat, in-

cluding easements for overhang of service wires for pole type utilities, and including the right of ingress, egress, and the right to trim interfering trees."

The dedication of this plat containing the above language was accepted by the city clerk on behalf of the City of Albuquerque on June 19, 1952. The dedication statutes in effect at the time of the dedication was §§ 14–204, 14–205, N.M.S.A., (1941 Comp.) provided, respectively:

"The acknowledgment and recording of such plat shall operate as a dedication to the public use of such portion of the premises platted as is on such plat set apart for street or other public use."

"All avenues, streets, alleys, parks and other places designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property, and the fee thereof be vested in such city or town."

By reading these statutes together, we find that § 14–204, supra, gives the public the use of certain property upon the acknowledgment and the recording of a plat, and § 14–205, supra, defines what type of interest the city gets upon such a recording. Furthermore, no dedicatory language is needed since both statutes provide for automatic dedication upon the acknowledgment and the recording of the plat.

We hold the proper interpretation of these statutes to be that, after dedication and acceptance, the land becomes the property of the municipality in fee simple, unless the dedication contains conditional language or a reservation in the grantor of a present or future interest. In other words, there is an absolute gift from the donors to the City unless there is conditional language in the dedication.

Plaintiffs contend that by their dedication to the City, they conveyed merely a determinable fee and not a fee simple absolute. They insist that inasmuch as the land was dedicated to the City for use as a park, the title reverted to plaintiffs when this purposed use was abandoned by the

City. As support they rely mainly on two New Mexico cases. Phillips Mercantile Company v. City of Albuquerque, 60 N.M. 1, 8, 287 P.2d 77, 82·(1955), held that regardless of a lack of conditional language in the recorded plat:

" * * * so long as there exists a public use for such dedicated streets, the city is given an absolute estate therein, * * *. But, when a city has determined a street is no longer of public use, * * * and when the use upon which the dedication was ·made is exhausted, the dedicators or their successors in interest have the right to be restored to their estate in the formerly dedicated property."

■ In Beverly Wood Associates v. City of Albuquerque, 78 N.M. 334, 431 P.2d 67 (1967), it was held that this same reasoning would apply where public parks are involved. Insofar as the decisions of these two cases hold or suggest that a dedication for public use pursuant to either of the above cited statutes, in the absence of a clearly expressed condition or reservation of interest in the instrument of dedication, vests something less than an indefeasible fee simple title in the municipality to the land dedicated, and reserves to or retains in the dedicator some future or conditional interest or right of forfeiture, we hereby overrule those decisions. As stated in Babin v. City of Ashland, 160 Ohio St. 328, 339, 52 Ohio Ops. 212, 217, 116 N.E.2d 580, 587 (1953):

' "Thus, the rule seems to be that, where a valid statute authorizes the appropriation of the fee of land for a specific public use or purpose instead of the taking of the mere use of land for such use or purpose, the appropriating authority may be authorized to sell the land taken when it determines that it is no longer needed for that use or purpose. Brooklyn Park Com'rs v. Armstrong, 45 N.Y. 234, 6 Am.Rep. 79. * * *"

Furthermore, Miller v. Village of Brookville, 152 Ohio St. 217, 40 Ohio Ops. 277, 89 N.E.2d 85 (1949), held that where a conveyance of land owned in fee simple is made to and accepted by a municipality in perpetuity for use as a park, and there is no provision for forfeiture or reversion, the grantor's entire estate is divested, and title of the municipality thereto is not a "determinable fee" but a "fee simple."

No exact language is required to create a determinable fee or a condition subsequent, but there must be a clear indicatoin in the dedication of an intent that an interest is given or granted as a determinable fee or on condition subsequent. As defined by Bergin and Haskell, Preface to Estates in Land and Future Interests, ch. 3, §§ 3, 4 (1966), "a possibility of reverter is that future interest which a transferor keeps when he transfers an estate and attaches a special limitation which operates in his own favor." When this type of interest is created, the grantee's estate automatically terminates upon the happening of an event. Typical language which is used to justify a possibility of reverter is: "so long as," "during," or "until." On the other hand, "a power of termination (also commonly called a right of re-entry) is that future interest which a transferor retains when he transfers an estate in his own favor." When a right of re-entry is created, the grantor or his heirs are given an election to terminate the estate upon the happening of an event. Language creating a right of re-entry may follow from: "provided that," "but if," or "upon the express condition." (All quotes from Bergin and Haskell, supra.)

■ In conclusion, if plaintiffs, at the time of dedication, had intended to impose the condition that the property would revert to them in the event of its non-use by the City for a park, or its misuse if diverted to other public purposes, they necessarily must have so stated in the dedication. The plat in question merely recites the purpose for which the property was to be used and contained no language creating an effective right of re-entry or possibility of reverter. Consequently, after the City de-

cided that the area was physically and eco-nomically unsuited for a park area, it acted properly in divesting itself of the land and applying the sale proceeds to the park fund.

The judgment of the trial court is hereby reversed and the cause remanded to the trial court to enter judgment for the defendants.

It is so ordered.

OMAN and STEPHENSON, JJ., concur.