2002-NMSC-017

47 P.3d 441

Jim BACA, Petitioner,

v.

NEW MEXICO DEPARTMENT OF
PUBLIC SAFETY, Respondent,

and

Ken McWethy, Heather Bartels, and
Paul Lisle, Intervenors.

No. 27,149.

Supreme Court of New Mexico.

June 4, 2002.

 

Vogel, Campbell, Blueher & Castle, P.C. David S. Campbell, Albuquerque, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Jerome Marshak, Assistant Attorney General, Santa Fe, NM, for Respondent.

John James D'Amato, Shannon Robinson, Albuquerque, NM, Stephen P. Halbrook, Fairfax, VA, for Intervenors.

Rene C. Ostrochovsky, Albuquerque, NM, for Amici Curiae, Brady Center to Prevent Gun Violence, New Mexico Advocates for Children and Families, New Mexico Council on Crime and Delinquency, and New Mexico Pediatric Society.

## *OPINION*

PER CURIAM.

{1} Petitioner Jim Baca, invoking this Court's constitutional power of original jurisdiction in mandamus, seeks a writ of mandamus prohibiting the Department of Public Safety from enforcing the provisions of the Concealed Handgun Carry Act, NMSA 1978, § 29–18–1 to –12 (2001). *See* N.M. Const. art. VI, § 3 (establishing this Court's original jurisdiction in mandamus). Petitioner contends that the Act violates Article II, Section 6 of the New Mexico Constitution because, he argues, this constitutional provision prohibits the carrying of concealed weapons. Alternatively, Petitioner argues that the Act is unconstitutional because it permits local governments to regulate an incident of the right to bear arms in conflict with Article II, Section 6. We conclude that the Act unconstitutionally allows municipalities and counties to regulate an incident of the right to bear arms and thus issue the writ of mandamus on this basis. As a result, we need not reach the argument that Article II, Section 6 prohibits the carrying of concealed weapons.

### I. Standing

{2} Petitioner initially filed his petition in his individual capacity as well as in his official capacity as Mayor of the City of Albuquerque. Following oral argument, this Court directed the parties to brief several

specific questions. During this additional briefing, Martin J. Chavez succeeded Petitioner as Mayor of Albuquerque. Mayor Chavez then moved to substitute himself as public officer pursuant to Rule 12–301(C) NMRA 2002 and to strike the petition on the ground that it no longer represented the position of the Mayor of Albuquerque. In response, Petitioner contended that we should not dismiss the petition because he has standing to pursue the matter in his individual capacity. We granted Mayor Chavez's motion to substitute based on Rule 12–301(C) and now permit him to withdraw as a party due to his rejection of the petition. However, we have denied Mayor Chavez's motion to strike the petition based on our decision to confer standing on Petitioner to maintain this action in his individual capacity due to the importance of the issues involved.

 {3} Petitioner seeks to invoke this Court's original jurisdiction in mandamus. "Assuming mandamus would otherwise lie, we exercise our power of original jurisdiction in mandamus if the case presents a purely legal issue that is a fundamental constitutional question of great public importance." *County of Bernalillo v. N.M. Pub. Regulation Comm'n (In re Adjustments to Franchise Fees)*, 2000 NMSC 035, ¶ 6, 129 N.M. 787, 14 P.3d 525. "We have recognized mandamus as a proper proceeding in which to question the constitutionality of legislative enactments." *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 363, 524 P.2d 975, 979 (1974). In this context,

> it has been clearly and firmly established that even though a private party may not have standing to invoke the power of this Court to resolve constitutional questions and enforce constitutional compliance, this Court, in its discretion, may grant standing to private parties to vindicate the public interest in cases presenting issues of great public importance.

*Id.* This Court is not alone in its recognition of an exception to standing in cases involving questions of great public importance. *See Pele Def. Fund v. Paty*, 73 Haw. 578, 837 P.2d 1247, 1268–69 (1992) ("This court has repeatedly demonstrated its fundamental policy that Hawaii's state courts should pro-

vide a forum for cases raising issues of broad public interest, and that the judicially imposed standing barriers should be lowered when the 'needs of justice' would be best served by allowing a plaintiff to bring claims before the court.") (footnote omitted); *Nat'l Parks & Conservation Ass'n v. Bd. of State Lands*, 869 P.2d 909, 913 (Utah 1993) ("This standard recognizes the need to have issues of great public importance resolved in compliance with the law when a court can act within its institutional and constitutional limitations."). *See generally Jolley v. State Loan & Inv. Bd.*, 38 P.3d 1073, 1078 (Wyo. 2002) ("The doctrine of great public interest or importance should be applied cautiously . . . .").

{4} We believe that the validity of the Concealed Handgun Carry Act raises a constitutional question of fundamental importance to the people of New Mexico. Thus, "[w]e simply elect to confer standing on the basis of the importance of the public issues involved." *Kirkpatrick*, 86 N.M. at 363, 524 P.2d at 979. Considering the importance of the questions raised in the petition, "[m]ore limited notions of standing are not acceptable" in the present case. *State ex rel. Clark v. Johnson*, 120 N.M. 562, 569, 904 P.2d 11, 18 (1995). We therefore proceed to consider Petitioner's request for writ of mandamus.

## II. Constitutionality of the Concealed Handgun Carry Act

 {5} Petitioner contends that the Concealed Handgun Carry Act violates Article II, Section 6 of the New Mexico Constitution. This constitutional provision states:

> No law shall abridge the right of the citizen to keep and bear arms for security and defense, for lawful hunting and recreational use and for other lawful purposes, but nothing herein shall be held to permit the carrying of concealed weapons. No municipality or county shall regulate, *in any way*, an *incident* of the right to keep and bear arms.

N.M. Const. art. II, § 6 (as amended 1986) (emphasis added). Because the Act requires the Department of Public Safety to promulgate a rule providing "authority for a county or municipality to disallow the carrying of a

concealed handgun within the limits of the county or municipality," NMSA 1978, § 29-18-11(D) (2001), Petitioner contends that the Act violates the last sentence of Article II, Section 6, as quoted above. We agree.

{6} The Act purports to allow municipalities and counties to prohibit the carrying of concealed weapons and, in so doing, delegates to them the power to regulate an incident of the right to keep and bear arms. The broad language in Article II, Section 6 of our Constitution prohibiting municipalities and counties from regulating an "incident" of the right to keep and bear arms "in any way" indicates an intent to preclude piecemeal administration at a local level and to ensure uniformity in the regulation of firearms throughout the State of New Mexico. Section 29-18-11(D) directly conflicts with the prohibition against local regulation in Article II, Section 6. Therefore, this provision is unconstitutional.

{7} The Department argues that the carrying of concealed weapons is not an incident of the right to bear arms because Article II, Section 6 specifically excludes the carrying of concealed weapons from its reach. Therefore, according to the Department, the Act's delegation of authority to the counties and municipalities is permissible. We are unpersuaded. The manner in which a person "bears" a weapon, whether concealed or in plain view, is an *incident* of the right to bear arms. "It must be presumed that the people know the meaning of the words they use in constitutional provisions, and that they use them according to their plain, natural and usual significance and import...." *See Flaska v. State*, 51 N.M. 13, 22, 177 P.2d 174, 179 (1946). We believe it is unnecessary to go beyond the common sense meaning of "bear." Our conclusion that the manner of carrying a weapon is an incident of the right to bear arms for purposes of the prohibition against local regulation in Article II, Section 6 shall not be construed as resolving in any way the meaning of the constitutional phrase, "but nothing herein shall be held to permit the carrying of concealed weapons."

{8} Alternatively, the Department argues that this unconstitutional provision can be severed from the remainder of the Act.

It is well established in this jurisdiction that a part of a law may be invalid and the remainder valid, where the invalid part may be separated from the other portions, without impairing the force and effect of the remaining parts, and if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and, when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid.

*Bradbury & Stamm Constr. Co. v. Bureau of Revenue*, 70 N.M. 226, 230-31, 372 P.2d 808, 811 (1962); *accord* 2 Norman J. Singer, *Statutes and Statutory Construction* § 44:3, at 552-53 (6th ed., rev.2001) ("The problem is twofold: the legislature must have intended that the act be separable, and the act must be capable of separation in fact."). In this case, we are faced with competing presumptions. We must first "bear[ ] in mind that every presumption is to be indulged in favor of the validity and regularity of the legislative act." *Bradbury & Stamm*, 70 N.M. at 231, 372 P.2d at 812. However, this presumption is tempered by the fact that the Act does not contain a severability clause. "The presence or absence of a severability clause merely provides one rule of construction which may be considered and may sometimes aid in determining legislative intent, '[b]ut it is an aid merely; not an inexorable command.' " *Id.* (quoting *Dorchy v. Kansas*, 264 U.S. 286, 290, 44 S.Ct. 323, 68 L.Ed. 686 (1924) (Brandeis, J.)). Therefore, the absence of a severability provision in the Act creates a weak presumption that the Legislature did not intend to allow severability. *See* Singer, *supra*, § 44:9, at 594.

{9} Relying on the test established in *Bradbury & Stamm*, we must first determine whether Section 29-18-11(D) can be separated from the Act in such a way as to give force and effect to the other provisions of the Act. The legislation allowing individuals to carry a concealed handgun could operate independently of the local opt-out provision. Thus, we conclude that the removal of Sec-

tion 29–18–11(D) from the Act would not impair the force and effect of the remaining provisions.

{10} Because the Act is capable of severance in fact, we must next determine whether the Legislature intended to allow the Act to stand in the event that Section 29–18–11(D) was declared invalid. We determine legislative intent in the context of severability by referring to the purpose of an act and by determining whether "the legislature would not have passed the remaining part if it had known that the objectionable part was invalid." *Bradbury & Stamm*, 70 N.M. at 231, 372 P.2d at 811. Because the Legislature did not articulate a specific purpose in the Act, we look at the entire Act to ascertain whether the Legislature would have passed the Act if it had known that Section 29–18–11(D) violated Article II, Section 6. *See United States Brewers Ass'n v. Dir. of N.M. Dep't of Alcoholic Beverage Control*, 100 N.M. 216, 219, 668 P.2d 1093, 1096 (1983) ("In New Mexico, legislative intent must be determined primarily by the *legislation itself*.").

{11} Considering the Act as a whole, we believe it is clear that the Legislature intended to enact a scheme of optional, as opposed to mandatory, implementation. Section 29–18–11(D) permits municipalities and counties to adopt a more restrictive approach to concealed weapons. In addition to this delegation of power to local governments in Section 29–18–11(D), the Legislature also provided that "[a] concealed handgun license shall not be valid on tribal land, unless authorized by the governing body of an Indian nation, tribe or pueblo," NMSA 1978, § 29–18–10 (2001), and provided "authority for a private property owner to disallow the carrying of a concealed handgun on his [or her] property," Section 29–18–11(C). Considering this overall design of optional implementation, we do not believe that the Legislature would have enacted the Act if it believed that all municipalities and counties throughout the State would be required to allow the carrying of concealed handguns. *See* Singer, *supra*, § 44:7, at 583 ("If by sustaining only a part of a statute, the purpose of the act is changed or altered, the entire act is invalid."). If we

were to invalidate Section 29–18–11(D) and leave the remaining provisions intact, we would be transforming an optional scheme into a largely mandatory one, contrary to the Legislature's intent. *See id.* § 44:13, at 603 ("To extend the scope of an act's operation by invalidating a provision of limitation while allowing the remainder to continue in effect invites criticism on the ground that it amounts to judicial legislation."). We thus conclude that Section 29–18–11(D) is so connected in subject and purpose with the Act as a whole that the Legislature would not have enacted the remainder of the Act if it had known that Section 29–18–11(D) was invalid. *See Bradbury & Stamm*, 70 N.M. at 234, 372 P.2d at 814. Section 29–18–11(D) cannot be severed without frustrating the Legislature's intent, and therefore, we determine that the Act as a whole is unconstitutional.

{12} With respect to Petitioner's remaining argument that Article II, Section 6 prohibits the carrying of concealed weapons and restricts the Legislature's ability to enact laws permitting the carrying of concealed handguns, we need not reach this issue. Having determined that the Act is unconstitutional on the narrow ground of local regulation, we refrain from reaching the broader constitutional question presented in the petition. *Cf. Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 688 n. 5 (7th Cir.1998) ("[I]t is a proper exercise of judicial restraint for courts ... to decide constitutional attacks on the narrowest possible grounds and to avoid reaching unnecessary constitutional issues.").

### III. Conclusion

{13} We determine that the Legislature's delegation of authority to local governments to prohibit the carrying of concealed weapons in Section 29–18–11(D) violates the constitutional proscription against municipal and county regulation of an incident of the right to keep and bear arms in Article II, Section 6 of the New Mexico Constitution. We also conclude that Section 29–18–11(D) is not severable from the remainder of the Concealed

Handgun Carry Act and that the Act as a whole is therefore unconstitutional. We hereby issue a peremptory writ of mandamus prohibiting the Department of Public Safety from promulgating rules pursuant to Section 29–18–11, from issuing licenses to carry concealed handguns pursuant to NMSA 1978, § 29–18–3 (2001), and from otherwise enforcing the requirements of the Act.

{14} **IT IS SO ORDERED.**

PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, GENE E. FRANCHINI, and PAMELA B. MINZNER, Justices.