2008-NMCA-089

188 P.3d 106

**PIEDRA, INC., Plaintiff–Appellee,**

v.

**STATE OF NEW MEXICO TRANSPOR-
TATION COMMISSION, John Hummer,
Johnny Cope, Norman Assed, Jim
Franken, David Schutz, and Greg Ortiz,
as Commissioners for The New Mexico
State Transportation Commission, The
New Mexico Department of Transporta-
tion, a State Agency, and Rhonda G.
Faught, P.E., Cabinet Secretary, Defen-
dants–Appellants.**

No. 26,923.

Court of Appeals of New Mexico.

March 31, 2008.

Certiorari Denied, No. 31,071,
May 22, 2008.

Scheuer, Yost and Patterson, P.C., Donald A. Walcott, Christopher M. Grimmer, Santa Fe, NM, for Appellee.

New Mexico Department of Transportation, Germaine R. Chappelle, William T. Moyers, Dan Gershon, Santa Fe, NM, for Appellants.

## OPINION

SUTIN, Chief Judge.

{1} The New Mexico Department of Transportation (the Department) and the New Mexico State Transportation Commission (the Commission), together with other defendants [1], appeal and assert that the dis-

---

1. Defendants in addition to the Department and the Commission are individual commissioners and the Department's Cabinet Secretary. No issue has been raised that requires us to distin- guish among Defendants as to whether any one of them, that is, the Department, the Commission, the Cabinet Secretary, or the commissioners had a particular authority or acted in excess

trict court erred in holding that they acted in excess of delegated authority in conveying parts of a road in the state highway system to the Pueblo of San Juan (the Pueblo) and to the County of Rio Arriba (the County). They also assert that the district court lacked jurisdiction to review the action of the Commission in declaring part of the road vacated and abandoned. We hold that, under the particular facts in this case, Defendants did not act in excess of their delegated authority. We further hold that the district court did not lack subject matter jurisdiction.

## BACKGROUND

{2} This case involves a road in the State of New Mexico highway system, State Road 582 (SR 582). A little over a mile and a half of SR 582 ran through and therefore existed within the lands of the Pueblo. This portion of the road consisted of the Department's right-of-way easement that was obtained from the Pueblo. A larger, northern portion of just less than seven and a half miles ran through and therefore existed within the County. This portion of the road was owned by the Department. Defendants had statutory administrative and management duties, and certain delegated authority, with respect to SR 582. *See* NMSA 1978, §§ 67–3–1 to – 66 (1909, as amended through 2006).

{3} In 1999 the Pueblo sought to obtain and assume control over that portion of SR 582 that ran through its land, which we refer to as "the Pueblo portion of the road." The Pueblo's request was made as a part of negotiations between the Department and the Pueblo over the Department's plans to realign and widen nearby U.S. 84/285, a federal highway situated immediately to the west of the Pueblo's village. The Department needed to acquire a new right-of-way from the Pueblo for the U.S. 84/285 work. The Department agreed to transfer the Pueblo portion of the road to the Pueblo, and to spend approximately $150,000 to improve the Pueblo portion of the road and also to pay the Pueblo $171,660 for the new right-of-way for the widened portion of U.S. 84/285. This transfer was carried out pursuant to a writ-

ten Declaration of Vacation and Abandonment (the declaration) approved by the Commission and accepted by the Pueblo in July 2000. The Commission declared the Pueblo portion of the road vacated and abandoned and stated that, upon execution of a road exchange agreement between the Commission and the County conveying the balance of SR 582 to the County "(1) all rights, title, and interest to the [Pueblo portion of the road] shall vest in the Pueblo, (2) the Pueblo shall have exclusive jurisdiction over the [Pueblo portion of the road], and (3) the [Pueblo portion of the road] shall be deleted from the state highway system." The Commission made the declaration effective immediately upon the execution of a road exchange agreement between the Commission and the County conveying or transferring the balance of SR 582 to the County. With respect to this transfer, the Department and the Commission agreed to spend an estimated $850,000 to improve that portion of SR 582 being conveyed to the County.

{4} Earlier, in March 2000, the Department signed and the Commission approved the Road Exchange Agreement (the exchange agreement) with the County. In the exchange agreement, the Department agreed to delete a 7.349 mile portion of SR 582 from the state highway and maintenance systems and to transfer title of it to the County.

{5} Piedra owns and operates a gravel mining operation situated along SR 582. Piedra and its assigns use the Pueblo portion of the road to transport gravel to various delivery sites. It appears that in the past, the Pueblo regulated travel on the Pueblo portion of the road through enforcement of traffic laws against Piedra drivers. It also appears that the Pueblo owns a competing gravel operation in the area.

{6} In April 2003, the Pueblo's realty officer, Herman Agoyo, sent a letter to Piedra (the Agoyo letter). The realty officer informed Piedra's owner that the Department had conveyed its right, title, and interest in the Pueblo portion of the road to the Pueblo. The Agoyo letter further stated:

---

of that authority. We therefore take the liberty in various places in this opinion to use "Defendants" in places where, for example, a statute

refers only to the Department or the Commission.

Since the 1990s, the Pueblo has regulated traffic, including vehicle weights, on S.R. 582 to protect the public health and safety of the residents of the Pueblo of San Juan. As you know, these Pueblo regulations affect your company's sand and gravel hauling operations on S.R. 582. I plan to discuss this matter with the Tribal Council soon, and after doing so, I would like to meet with you to discuss our respective interests in an effort to reach an accommodation over the use of this tribal road. Please let me know when you are available to meet.

No meeting occurred. Piedra filed the present suit in November 2003 and, in an amended complaint, Piedra sued in mandamus to require Defendants to maintain SR 582 as a state road in the state highway system. After the parties filed motions for summary judgment, the district court entered an order in June 2006 granting Piedra's motion and denying Defendants' motion.

{7} In its June 2006 order, the district court determined, among other things, that Defendants lacked the "requisite statutory authority to permanently transfer or convey ownership of roads" and "to promulgate rules or policies that would grant them [such] authority." The court issued a writ of mandamus, in which it found that Defendants "exceeded the authority granted to them by the [L]egislature ... by entering into or otherwise approving" the exchange agreement and the declaration. The writ required the Commission, its individual members, and the Secretary "to desist from enforcing, implementing, completing, finalizing, or effectuating" the declaration and the exchange agreement, and to continue to maintain SR 582 "in full compliance with statutory law."

{8} Defendants appeal, asserting first that the court erred in issuing the writ finding that Defendants exceeded the authority granted them by the Legislature. Defendants' second point is that the court erred in issuing the writ because the exercise by Defendants of legislatively delegated authority is not subject to judicial review. Ancillary to this second issue, Defendants contend that a mandamus writ is improper where, as here, Defendants were exercising statutorily delegated discretionary power, and they also contend that Piedra lacked standing to challenge Defendants' actions.

## DISCUSSION

{9} We preface our analyses with the various statutes that play a role in the parties' arguments. We then set out specific determinations the district court made with respect to certain statutes. Thereafter, we address the various arguments and issues that need to be addressed to properly dispose of this case on appeal.

### A. Pertinent Statutes and Department Regulation

{10} The parties argue the application of several statutes. We first set out those pertinent in this case to the duty and authority of Defendants pursuant to Chapter 67 of the statutes to establish and maintain public roads and highways. Section 67-3-14 states that the Commission "has charge of all policy matters pertaining to the expenditure of the state road fund in the construction, improvement and maintenance of state highways." § 67-3-14(A). The Commission may make rules and regulations governing those matters. § 67-3-14(B). Section 67-3-16 states that the Commission has "the duty ... to construct, repair and maintain, at the expense of the state ... such public roads and highways, within the state, as in their judgment will best subserve the interest of the general public, looking to the construction and maintenance of a complete system of highways in the state." *Id.* Under Section 67-3-26, the Secretary, under the direction of the Commission, is to "select and designate the highways that should comprise a system of state roads, which shall, as nearly as practicable, be such as will serve the traffic needs and develop the resources of the state." *Id.* The designation of the system of state roads "may be changed or added to from time to time by the secretary subject to the approval of the [Commission]". *Id.* Pursuant to Section 67-3-28, the Department has authority to enter into cooperative agreements with a broad number of government entities to share expense relating to construction and improvement of highways or for the acquisition of rights-of-way. *Id.*

Section 67–3–37 grants the Commission rights to acquire property and property rights in connection with construction or reconstruction of the national system of interstate and defense highways. § 67–3–37(A). Under Section 67–3–40, the Commission is given "full control over all roads designated by the commission as state highways"; however, if insufficient funds exist in the state road fund for the maintenance of the highways, the statute requires the highways to "be improved and maintained wholly by the respective counties until sufficient funds shall be provided in the state road fund to enable the state to take over and maintain them as state highways." § 67–3–40 (1919). Section 67–3–71 grants to the Department the right to acquire property by numerous means for the purpose of construction and operation of a transportation system, and to "negotiate for the acquisition of property from any person, governmental entity or Indian tribe or Indian pueblo." NMSA 1978, § 67–3–71 (1997). In 1997 the Commission adopted an administrative policy, CP 62, that permits the Commission under certain circumstances to obtain an addition to the state highway system by exchanging an existing road where the exchange involves another governmental entity.

{11} Section 67–2–6 states:

Property or property rights acquired by purchase or condemnation by the state or any commission, department ... of the state for public road, street or highway purposes shall not revert until such property or property rights are vacated or abandoned by formal written declaration of vacation or abandonment which has been duly declared by the state or any commission, department ... of the state in whom the property or property right has vested. The right to abandon and vacate shall exist regardless of whether the public road, street or highway was created by the [L]egislature or otherwise.

NMSA 1978, § 67–2–6 (1975).

{12} Statutes outside of Chapter 67 expressly, although generally, deal with the conveyance of property and interests in property. Section 47–1–4, within the chapter of Property Law, states that "[a]ny person or persons, or body politic, holding ... any right or title to real estate ... may convey the same in the manner and subject to the restrictions prescribed in this chapter." NMSA 1978, § 47–1–4 (1852). In the chapter designated Actions and Proceedings Relating to Property, and particularly in the article designated Special Alternative Condemnation Procedures, NMSA 1978, § 42–2–3(A) (1981), discusses the state's right to acquire real property or interests in property by various means, including by "agreement, purchase, exchange, condemnation or otherwise" in fee simple for public road purposes. In the chapter designated Public Purchases and Property, Section 13–6–2(A) stated, as it existed in 2000, that "[a]ny state agency ... is empowered to sell or otherwise dispose of real ... property belonging to the state agency[.]" NMSA 1978, § 13–6–2(A) (1989) (amended 2007). Under Section 13–6–2(A), approval by the state department of finance and administration was required for sale or disposal when the current resale value of the property exceeded $5,000. *Id.* However, Subsection (F) of this statute stated that "[t]he provisions of this section shall not be applicable as to ... the state highway commission." § 13–6–2(F) (1989).

## B. The District Court's References to Statutes and Rulings

{13} The district court limited its attention to four statutes. Specific references to statutes in its order favoring Piedra are the following as characterized by the court: Section 67–3–40, giving Defendants "the authority to temporarily certify maintenance responsibility of roads within the State Road System ... to the appropriate county"; Section 67–2–6, giving Defendants "statutory authority to vacate and abandon roads within the State Road System"; limited, however, by Section 67–3–16 placing a duty on the Commission "to construct, repair and maintain ... such public roads and highways ... as in their judgment will best subserve the interest of the general public"; and Section 67–3–26, giving Defendants "the authority to delete roads from the State Road System," as long as they "comply with the provisions

for vacating and abandoning roads contained in [Section 67–2–6]."

{14} Following these and other determinations, the district court determined that it did not appear that Defendants conducted any evaluation of the public need and interest in retaining SR 582; that the declaration was executed as part of a plan to permanently transfer or convey a portion of SR 582 to the Pueblo; that the efforts to transfer or convey to the Pueblo through the declaration did not constitute a valid exercise of power to vacate and abandon roads under Section 67–2–6; that Defendants lacked the requisite statutory authority to permanently transfer or convey a portion of SR 582 to the Pueblo; and that the exchange agreement did not constitute a valid exercise of power to vacate and abandon that portion of SR 582 that lay within the County and also was an unauthorized attempt to permanently transfer or convey that portion to the County.

**C. The Arguments**

{15} We first address the issue of Defendants' authority, following which we address the issue of subject matter jurisdiction.

**1. The Issue of Authority to Convey Roads**

{16} Defendants essentially argue that the highway-related and general property-related statutes reflect an inherent right, as well as provide express or a necessarily implied broad, plenary power and authority to delete roads from the state highway system and to permanently convey them to governmental entities. Piedra essentially argues that Defendants' authority stems solely from statute and that no statute, expressly or through necessary implication, grants authority for Defendants to permanently convey state roads or highways. Piedra asserts that Defendants have authority only to vacate and abandon roads, and that the process of vacation and abandonment requires the Commission to have determined that removal of the road or highway from the state highway system subserved the interest of the general public. Whether Defendants acted with statutory authority is a question of law and our review is de novo. *See Phelps Dodge Tyr-*

*one, Inc. v. N.M. Water Quality Control Comm'n,* 2006–NMCA–115, ¶ 11, 140 N.M. 464, 143 P.3d 502 (reviewing question regarding extent of agency's statutory authority de novo); *see also Morgan Keegan Mortgage Co. v. Candelaria,* 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (stating de novo standard of review).

**a. Broad, Plenary Power**

{17} Defendants characterize the Commission as a constitutionally and statutorily created department of government within the executive branch "endowed with the power to establish a system of state highways." *See* N.M. Const. art. V, § 14; § 67–3–14. They note that the Commission has the powers granted in Sections 67–3–14(A), –16, –26, and–40, including, among other things, "full control" over the state road system, the power to "select and designate the highways that . . . comprise" the system, the power to change and add to those highways, and the power to manage the highway system in "all policy matters," as well as to maintain the highways as in their judgment "will best subserve the interest of the general public." "The authority of an administrative agency . . . is not limited to those powers expressly granted by statute, but includes all powers that may be fairly implied therefrom." *N.M. Dep't of Health v. Ulibarri,* 115 N.M. 413, 416, 852 P.2d 686, 689 (Ct.App. 1993). "However, an administrative agency may not exercise authority beyond the powers that have been granted to it." *Kilmer v. Goodwin,* 2004–NMCA–122, ¶ 24, 136 N.M. 440, 99 P.3d 690.

{18} In addition to citing numerous out-of-state cases to support its arguments, Defendants rely on *Gallegos v. Conroy,* 38 N.M. 154, 29 P.2d 334 (1934). In *Gallegos,* the issue was whether the power to construct, repair, and maintain highways included the power to lay them out. *Id.* at 160–61, 29 P.2d at 339. Our Supreme Court reversed an injunction against construction of a road and new intersection and the elimination of a pre-existing intersection, resulting in alleged damage to a private business. *Id.* at 155–56, 164, 29 P.2d at 335, 341. The Court recited treatise statements that the power of a state

highway commission over roads resided in the Legislature and that, except as may be restricted by constitutional provisions, "the legislative power is practically unlimited." *Id.* at 161, 29 P.2d at 339. In addition, the Court stated that "[t]he paramount purpose of the creation of the highway commission was to subserve the public interest, looking to the construction and maintenance of a complete system of highways in the state[,]" and that the "general policy of all legislation ... is to centralize control of the state highways in the highway commission." *Id.* at 162, 29 P.2d at 340-41. Further, the Court stated:

> The Legislature has designated the state highway commission as that body which has control over our state highways. It is the body which determines the necessity of such construction. As such body, it has the power of acquiring rights of way and the power to designate and lay out state highways.

*Id.* at 163, 29 P.2d at 340.

{19} From the full panoply of broad, plenary statutory authority and the language and holding in *Gallegos,* Defendants thus assert a " 'practically unlimited' " legislatively delegated power. This practically unlimited delegated power, in Defendants' view, necessarily means and includes not only the power to designate and lay out highways, but also the power to close, change, and delete roads from the system as part of the Commission's "inherent and plenary powers to manage the state highway system," including being free to convey roads in such a manner as it sees fit.

{20} Piedra argues that no statute expressly delegates to Defendants "the power to convey entire highways in the state highway system" and that such power cannot be necessarily implied from any provision in Chapter 67, Articles 2 and 3. According to Piedra, the power to vacate and abandon highways that no longer subserve the public interest provides sufficient, as well as the only authority to dispose of highways, and thus any power to sell state highways is not needed and therefore not necessarily implied in Chapter 67, Articles 2 and 3.

### b. Specific Commission Plenary Power to Delete or Remove Roads

{21} Defendants contend that Section 67-3-26 specifically grants broad, plenary power to "select and designate the ... system of state roads" which "may be changed or added to from time to time." Defendants argue that this language necessarily encompasses both adding to and subtracting from the highway system. In support of this argument, Defendants cite *Town of Vernon v. Waukesha County,* 102 Wis.2d 686, 307 N.W.2d 227 (1981), in which the court, addressing circumstances somewhat similar to those at issue in the present case, construed the word "alter" in "alter or increase" a highway system, to necessarily "include that type of a change which authorizes the [government body] to eliminate a highway from the ... highway system." *See id.* at 230. Thus, in Defendants' view, Section 67-3-26 mandates a conclusion that the Commission has the authority to discontinue or delete a highway in the system. Piedra argues that the power to change the state highway system reflected in Section 67-3-26 must be read with and limited by the express provisions of Sections 67-2-6 and 67-3-16.

### c. Specific Department Plenary Power to Abandon and Convey Portions of Roads to Other Governmental Entities

{22} Defendants also contend that, consistent with the fundamental and basic right to freely alienate property interests, they had the right and authority to abandon and convey SR 582. Defendants cite several statutes and cases to confirm the right to not only acquire real property but to convey it. *See* § 42-2-3(A); § 47-1-4; § 67-3-37; § 67-3-71; *State ex rel. State Highway Comm'n v. Burks,* 79 N.M. 373, 375, 443 P.2d 866, 868 (1968) ("Clearly, the State Highway Commission is a department of the State of New Mexico, and authorized by the [L]egislature to acquire property for highway purposes."). Piedra's response is that a reading of the statutes shows that the Legislature has not actually granted Defendants the power to remove or delete highways by means other than the vacation and abandonment

authority granted in Section 67–2–6, which is limited by the duty in Section 67–3–16.

{23} Defendants emphasize, in particular, that the Department and the Commission is each a "body politic" under Section 47–1–4, which provides that any body politic holding title to real estate may convey it as prescribed in the chapter. Defendants cite *Looney v. Stryker*, 31 N.M. 557, 562, 249 P. 112, 113 (1926), which states that "[t]he state highway commission is an agency of the state and not a separate body politic or corporate[,]" and they interpret this language to mean the Commission, "as an agency of the state[,] is part of the state body politic." Piedra, of course, points out that part of the sentence in *Looney* that states "not a separate body politic" in arguing that neither the Department nor the Commission is a separate body politic. *See Ind. State Highway Comm'n v. Rickert*, 412 N.E.2d 269, 274 (Ind. Ct.App.1980) (stating that the Indiana State Highway Commission was an agency of the state and "cannot be said to be a body politic and corporate"), *opinion vacated on other grounds by* 425 N.E.2d 620 (Ind.1981).

{24} Further, Defendants assert that the vacation and abandonment statute, Section 67–2–6, and its companion statute, Section 67–2–7, "are property reversion statutes which codify the common law that if a highway is vacated[,] the title to the land reverts to the original and abutting property owners." Thus, Defendants argue that Section 67–2–6 is neither the exclusive procedure by which the Department may relinquish property rights, in that Section 47–1–4 confers the power to dispose of property rights, nor, is Section 67–2–6, as a reversion statute, a limitation on the right of the Department to convey property rights to other governmental entities.

{25} Defendants further rely on the case of *State ex rel. Madrid v. UU Bar Ranch Ltd. Partnership*, 2005–NMCA–079, 137 N.M. 719, 114 P.3d 399, to underscore its position that the Commission has authority to abandon and convey roads and highways. In *UU Bar*, this Court set aside an abandonment of a road by the Department and a transfer by the Department of the road to the State Game Commission. *Id.* ¶¶ 4, 27,

32. We determined that the abandonment was ineffective and unlawful because it was not properly approved by the state board of finance as required by Section 13–6–2(A), as that statute existed in 1985, which required a sale or disposal of real property by a state agency to be approved by the state board of finance. *Id.* ¶ 12. Defendants see *UU Bar* as significant because this Court did not say or hold that the Department did not have authority to abandon the road and also transfer it to another governmental entity, but ruled only that the Department had failed to follow a statutory approval requirement. Defendants also see, as "of utmost importance," the fact that Section 13–6–2(A) was amended in 1989 in a manner, as Defendants interpret the statute, whereby the Department was no longer required to seek approval of the state board of finance in order to dispose of roads. Thus, with "the only statutory bar to the abandonment of the road subject to the decision in *UU Bar* having been legislatively eliminated," Defendants argue that it logically follows "that the Department has the authority to relinquish control over its roads, to abandon them, and to transfer control of its roads to other governmental entities." Lastly, as to *UU Bar*, Defendants point to the observation of this Court that "without a legally effective abandonment, title remains with the Highway Department who is free to convey, or reconvey, title as it sees fit." *Id.* ¶ 10.

**d. Our Limited Determinations in Regard to Authority**

{26} We see nothing in any constitutional provision or statute that requires us to conclude that Defendants had no authority, under the specific circumstances in this case, to convey parts of SR 582 as it did to the Pueblo and to the County. The transfer of SR 582 did little more than carry out a vacation and abandonment reversionary process under Section 67–2–6 with respect to the Pueblo portion of SR 582, while keeping the remainder of SR 582 open for the public through County ownership. The conveyance to the Pueblo of the Pueblo portion of the road was nothing more than an incidental and likely unnecessary action to complete the

reversionary process of vacation and abandonment of the road. The reversion simply implanted in the Pueblo its prior ownership.

{27} Furthermore, the conveyance to the County would appear, under the circumstances, to be a reasonable effort to continue the obligations and duties of maintenance of the remainder of SR 582 for the public in the hands of another governmental body of the state having statutory duties in regard to roads. *See* NMSA 1978, § 67–2–1 (1905) (describing what roads are "public highways"); NMSA 1978, § 67–2–2 (1905) (describing what roads are to be maintained and kept in repair by counties); NMSA 1978, § 67–2–6 (1975) (relating to vacation and abandonment of roads by any political subdivision of the state); NMSA 1978, § 67–2–7 (1959) (same); NMSA 1978, § 67–5–4 (1905) (setting out the procedure for discontinuance by a county of a road or part of a road). In regard to the conveyance to the County, the exchange agreement states that, by making the agreement to better define each party's responsibility for improving and maintaining public roads and streets in county areas, "users of the road and street system will experience a higher level of service." The exchange agreement also states that "certain road and street exchanges need to occur to better align the jurisdictional responsibilities of the parties regarding the public roads and streets in the [County]." Piedra does not argue or provide authority that the conveyance to the County will be detrimental to the interest of the general public. We see nothing in this particular conveyance that should be considered outside the realm of Defendants' statutorily delegated authority.

{28} We do not think that the lack of express and specific or direct authority in the statutes to permanently convey roads forbids Defendants from taking the actions they took in this case. If Defendants were to permanently convey a road out of the state highway system such that the interests of the general public were harmed and not subserved, we would feel free to review those actions. Here, however, there is nothing to indicate that the interests of the general public were harmed or not subserved to an extent that would place into question Defendants' authority.

{29} We do not address to what extent, if any, Defendants were required to show that they considered whether their actions best subserved the interest of the general public. Piedra has offered no authority to persuade us that Defendants had any legal duty administratively to engage in a written evaluation or any sort of hearing on the issue of whether the actions they contemplated subserved the interest of the general public. Nor are we convinced that Defendants had the burden in the district court to show that they considered whether their actions best subserved the public interest.

{30} It is noteworthy that in oral argument before this Court, Defendants acknowledged that in removing roads from the state highway system, they must act in a manner that subserves the interest of the general public. Also, in their reply brief on appeal, as well as in oral argument, Defendants acknowledged that their road removal power is restricted to "when a public road is no longer needed as part of the state's road system," which, according to another acknowledgment at oral argument, means acting to subserve the interest of the general public. Under the circumstances, however, we do not see the necessity of remanding this case to take further evidence on the issue of whether, and, if so, to what extent, Defendants considered whether their actions were in conformity with their duty to subserve the interest of the general public. When questioned in oral argument, Piedra acknowledged that it was asking for nothing more than that Defendants consider whether their actions subserved the interest of the general public. Piedra did not require any written evaluation or evidentiary hearing on the extent to which consideration of the public interest actually occurred or was adequate. We are convinced that the absence of affirmative testimony of explicit and conscious consideration of the interest of the general public does not under the circumstances in this case support the district court's determination that Defendants acted in excess of their delegated authority.

{31} We see no reason in this case to address, as Defendants wish, whether they have virtually unrestricted or unlimited ple-

nary authority to permanently delete roads from the state highway system by conveyance. In the narrow context òf the conveyances in this case, we interpret the power in Section 67–3–26, which is to "select and designate the . . . system of roads," which "may be changed or added to from time to time," to permit Defendants to change the system of roads by engaging in the conveyances that occurred here. Thus, under the particular facts here, we hold that Defendants had statutory authority to make the conveyances they made in this case.

■■■ {32} We disagree with Defendants that *UU Bar* is controlling in any respect on the issue of authority to convey. The issue was neither analyzed nor decided in *UU Bar,* and the statements in regard to authority to convey constitute dicta. "[C]ases are not authority for propositions not considered." *Fernandez v. Farmers Ins. Co. of Ariz.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (internal quotation marks and citation omitted). In addition, we disagree with Defendants' view that the exclusion of the Commission from Section 13–6–2(A), as it existed in 2000, is to be construed to mean that the Commission has express authority to sell or otherwise dispose of (and thus convey) real property (and thus roads). Defendants argue that the Commission is excluded from the statute only insofar as the provision requires approval of the sale by the state board of finance. This interpretation of the statute is plainly erroneous. The statute specifically states that "[t]he provisions of this section shall not be applicable . . . to . . . [the Commission]." § 13–6–2(F) (1989). This is not ambiguous. The section includes Subsection (A). The plain meaning is that any authority to dispose of roads under Section 13–6–2 is not granted to the Commission by the section. *See Sims v. Sims,* 1996–NMSC–078, ¶ 17, 122 N.M. 618, 930 P.2d 153 (stating that the plain-meaning rule requires a court to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous).

{33} Further, we are not persuaded that any of the general statutes in effect in 2000 in regard to alienation of property should be considered as independent express authority

granted to Defendants to permanently convey roads out of the state highway system. Barring specific references to roads or highways in the general property statutes, it is the specificity of Chapter 67, Articles 2 and 3, to which we look for actions and authority in regard to deletion and conveyance of roads or highways from the state highway system. *Cf. State v. Guilez,* 2000–NMSC–020, ¶¶ 15–17, 129 N.M. 240, 4 P.3d 1231 (indicating that when statutes are in conflict, but the conflict is not irreconcilable, the court will determine legislative intent as to preemption and whether one statute is designed to give greater protection than the other). In addition, we read our Supreme Court's language in *Looney* that "[t]he state highway commission is an agency of the state and not a separate body politic or corporate" to mean what it says, despite Defendants' twist to the contrary. *See id.* at 562, 249 P. at 113. Thus, we do not think that Section 47–1–4, which authorizes any body politic holding title to real estate to convey it, applies to authorize Defendants' conveyances in this case.

## 2. The Issue of Judicial Review of the Exercise of Legislatively Delegated Powers

■■■ {34} Defendants contend that the district court lacked subject matter jurisdiction to review their decisions. We review lack of subject matter jurisdiction and interpretation and application of law de novo. *See Weddington v. Weddington,* 2004–NMCA–034, ¶ 13, 135 N.M. 198, 86 P.3d 623; *Martinez v. Segovia,* 2003–NMCA–023, ¶ 9, 133 N.M. 240, 62 P.3d 331. "The determination of whether a party has standing to sue is a question of law, which we review de novo." *Forest Guardians v. Powell,* 2001–NMCA–028, ¶ 5, 130 N.M. 368, 24 P.3d 803.

{35} Defendants argue three points to support their contention. Defendants first argue that their exercise of legislatively delegated powers over the state highway system is not subject to judicial review, by virtue of the fact that they were performing a legislative function. Second, they argue that the district court erred in issuing a writ of mandamus by reviewing that discretionary exer-

cise of powers. And third, Defendants argue that the district court erred in ruling that Piedra had standing, contending that Piedra had "no documented 'injury in fact, caused by action of the Commission, the Department, the Pueblo or County,'" and also that Piedra has not "demonstrated a basis for 'great public importance standing.'" We disagree with Defendants' first two contentions, and see no need to address their third contention relating to standing. We discuss each of these in turn.

### a. Bar of Judicial Review

{36} Defendants assert that their decisions and actions are legislative in nature. *See Phillips Mercantile Co. v. City of Albuquerque,* 60 N.M. 1, 13, 287 P.2d 77, 85 (1955) (stating that "vacation of public streets and highways is essentially a legislative function" and "a plenary and absolute power, subject to constitutional limitations, and [the power] may be delegated to the state's municipal divisions"), *overruled on other grounds by Wheeler v. Monroe,* 86 N.M. 296, 523 P.2d 540 (1974). Defendants argue that the Legislature's grant of full control and power with respect to the state highway system indicates an intention to delegate its legislative powers of control over the system and indicates, as well, that the Legislature did not intend there to be judicial oversight of the delegated power. They argue that their decisions in the present case were made in the exercise of "quasi-legislative powers" that the courts have no power or subject matter jurisdiction to review. *See Chavez v. County of Valencia,* 86 N.M. 205, 208–10, 521 P.2d 1154, 1157–59 (1974) (holding that county commission, and not the district court, had the power to vacate or abandon roads); *City of Albuquerque v. State ex rel. Vill. of Los Ranchos de Albuquerque,* 111 N.M. 608, 613, 808 P.2d 58, 63 (Ct.App.1991) ("Generally, the courts will not inquire into the wisdom of legislative or executive decisions, or substitute their views for those of other departments or entities."); *State ex rel. State Highway Comm'n v. Burks,* 79 N.M. 373, 375, 443 P.2d 866, 868 (1968) (holding that "the State Highway Commission is a department ... authorized by the [L]egislature to acquire property for highway purposes" and that "the question of

the necessity or expediency of a taking in eminent domain lies with the [L]egislature and is not a proper subject for judicial review").

{37} Defendants also characterize their decisions in terms of the exercise of discretionary authority and they argue that decisions made in the exercise of such authority are not subject to judicial review. *See North v. Pub. Serv. Co. of N.M.,* 101 N.M. 222, 227, 680 P.2d 603, 608 (Ct.App.1983) (holding, as to the selection of the location of a right-of-way by a public utility for condemnation for its corporate purposes, that the matter was "within the discretion and judgment of the company and is a part of the sovereign right of eminent domain which is granted to it by the [L]egislature," and further that "[t]he exercise of this judgment and discretion cannot be inquired into by the courts in the absence of fraud, bad faith, or gross abuse of discretion"). Defendants cite cases from other jurisdictions, as well, to support this proposition. According to Defendants, when the Legislature delegated authority to the Commission "as in their judgment will best subserve the interest of the general public, looking to the construction and maintenance of a complete system of highways in the state," § 67–3–16, the Legislature did not intend for the courts to second-guess their decisions.

{38} There is little question that courts have subject matter jurisdiction to review a claim that a department of government is acting in excess of delegated authority. *See, e.g., State ex rel. Clark v. Johnson,* 120 N.M. 562, 568, 570, 904 P.2d 11, 17, 19 (1995) (exercising original jurisdiction to issue a writ of mandamus to prohibit the governor from acting in violation of the constitution by acting in excess of his "authority under New Mexico law to enter into the compacts and agreements absent legislative authorization or ratification"). The district court did not err in entertaining Piedra's claim that Defendants acted in excess of their authority. Nor are we barred from reviewing it. This issue does not involve Commission discretion or quasi-legislative action under delegated authority. Here, the district court reviewed the facts, construed applicable statutes, and applied the law to

the facts, all solely on the issue of whether Defendants acted in excess of their authority, all of which are appropriate judicial functions. The district court also had jurisdiction to consider whether Defendants were required by statute to consider the interest of the general public when acting to abandon and vacate and/or convey a road. We note again that, in oral argument, Defendants conceded that they have that particular duty.

{39} We have held that Defendants had authority to convey. What would be arguable is whether a court can review whether Defendants' actions were proper or lawful under acknowledged delegated authority to abandon, vacate, and convey. The particular issue in that regard would be whether a court can review the adequacy of Defendants' consideration of the interest of the general public when acting to abandon and vacate and/or convey a road. In the present case, however, the district court did not evaluate the adequacy or sufficiency of any such consideration. The court, instead, granted Piedra relief on the ground that Defendants acted in excess of authority by permanently conveying SR 582, and to some degree, it appears, on the ground that Defendants totally failed to even consider any aspect of the interest or needs of the general public.

### b. Bar of Mandamus by Reviewing Discretionary Exercise of Powers

{40} Defendants' approach here is to show error in issuing a writ of mandamus where their actions involved the discretionary exercise of statutorily delegated powers by a state official. *See State ex rel. Castillo Corp. v. N.M. State Tax Comm'n*, 79 N.M. 357, 362, 443 P.2d 850, 855 (1968) (stating that the court "would not interfere with the valid exercise of discretion by a state official" and that "the purpose of mandamus is to compel, not control"); *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998–NMCA–023, ¶ 16, 124 N.M. 698, 954 P.2d 763 ("Mandamus is appropriate to compel the performance of a statutory duty only when that duty is clear and indisputable."). Pointing out that mandamus is used "to compel the performance of an affirmative act by another where the duty to perform the act is clearly enjoined by law and where there is no other plain, speedy and adequate remedy in the ordinary course of law[,]" *West v. San Jon Bd. of Educ.*, 2003–NMCA–130, ¶ 9, 134 N.M. 498, 79 P.3d 842 (internal quotation marks and citation omitted), and citing a significant list of cases on the subject of mandamus, Defendants argue that the applicable statutes that grant power and authority to Defendants are couched in terms of discretionary, not ministerial duty or authority. Thus, according to Defendants, the district court lacked any basis on which to issue the writ in this case.

{41} We hold that, although otherwise improvidently issued in this case because Defendants did not act in excess of their authority, the writ of mandamus here does not interfere with discretionary authority. It is based on and addresses only the determinations that Defendants acted without requisite statutory authority in permanently transferring or conveying ownership of roads within the state highway system.

{42} We note that the court also determined that "Defendants do not appear to have conducted any evaluation of the public need and interest in retaining State Road 582 as a part of the State Road System prior to their decision to enter into the March 16, 2000 Road Exchange Agreement and the July 14, 2000 Declaration of Vacation and Abandonment." We read this only as a determination made solely as to whether Defendants utterly failed to consider whether their actions subserved the interest of the general public. In addition, while we are aware of the broad language in *Gallegos* set out earlier in this opinion, and although we do not address or decide the issue today, we are not convinced that the court would not have jurisdiction to issue a writ of mandamus if the court was satisfied that the actions of Defendants wholly failed to subserve the public interest.

### c. Standing

{43} "The requirements for standing derive from constitutional provisions, enacted statutes and rules, and prudential considerations." *Forest Guardians*, 2001–NMCA–028, ¶ 16, 130 N.M. 368, 24 P.3d 803 (internal quotation marks and citation omit-

ted). *Forest Guardians* sets out the guidelines we are to follow for analyzing standing. *See id.* Lack of standing, under the standing guidelines we follow, does not necessarily translate into lack of subject matter jurisdiction. *See Does I through III v. Roman Catholic Church of Archdiocese of Santa Fe, Inc.,* 1996–NMCA–094, ¶ 27, 122 N.M. 307, 924 P.2d 273.

{44} Denial of standing under the guidelines may not prevent enforceability of a claim that involves a question of great public importance. *See Baca v. N.M. Dep't of Pub. Safety,* 2002–NMSC–017, ¶¶ 3–4, 132 N.M. 282, 47 P.3d 441 (entertaining an action raising "a constitutional question of fundamental importance to the people of New Mexico" in regard to the validity of the Concealed Handgun Carry Act); *State ex rel. Coll v. Johnson,* 1999–NMSC–036, ¶ 21, 128 N.M. 154, 990 P.2d 1277 (noting that recent cases in which our Supreme Court invoked the great-public-importance doctrine "generally involved clear threats to the essential nature of state government guaranteed to New Mexico citizens under their [c]onstitution"). To invoke the doctrine, the challenged conduct must be such that it "threatens the integrity of state government or the state's definition of itself as sovereign[.]" *Forest Guardians,* 2001–NMCA–028, ¶ 35, 130 N.M. 368, 24 P.3d 803 (internal quotation marks and citation omitted). When looking at whether to permit an action to proceed under the great-public-importance doctrine, "the fact that a case involves a duty that state officials owe to the general public as a whole is not sufficient to show that the case involves an issue of great public importance." *Coll,* 1999–NMSC–036, ¶ 21, 128 N.M. 154, 990 P.2d 1277.

{45} Although it appears to us that Piedra has a rough "row to hoe" to establish standing or prove the right to seek enforcement of its claim under the great-public-importance doctrine, we assume, without deciding, that standing exists. Our decision that Defendants had authority to convey under the facts of this case is dispositive and renders it unnecessary for us to address standing under any rationale. Having determined the issue of authority in favor of Defendants, we choose not to address any issue relating to standing or the right to pursue a claim under the great-public-importance doctrine.

## CONCLUSION

{46} The district court erred in determining that Defendants acted in excess of requisite statutory authority to permanently convey portions of SR 582 to the Pueblo and to the County as did occur in this case. The writ of mandamus was improvidently and erroneously issued and is hereby quashed. Insofar as the district court may have intended to hold that Defendants exceeded their statutory authority by failing to consider whether the conveyances subserved the interest of the general public, the court also erred. We therefore reverse the district court.

{47} **IT IS SO ORDERED.**

I CONCUR: A. JOSEPH ALARID, Judge.

IRA ROBINSON, Judge (concurring in part and dissenting in part).

ROBINSON, Judge (concurring in part and dissenting in part).

{48} I respectfully dissent on one issue only. The majority states: "If Defendants were to permanently convey a road out of the state highway system such that the interests of the general public were harmed and not subserved, we would feel free to review those actions. Here, however, there is nothing to indicate that the interests of the general public were harmed or not subserved to an extent that would place into question Defendants' authority[.]" Majority Opinion ¶ 28.

{49} The problem with this analysis is that the majority finds a lack of the negative— that the actions of Defendants do not harm the interests of the general public. The law, Section 67–2–6, however, requires us to find the affirmative—that the actions of Defendants subserve the interests of the general public. The problem, as I see it, is that Defendants did not demonstrate to the district court that their actions in abandoning and vacating the SR 582 roadway in question were to "subserve[ ] the interest of the general public." It is also accepted in the opin-

ion that the district court made no specific determination or finding that Defendants acted to subserve the interest of the general public in abandoning and vacating this roadway.

{50} Unfortunately, the determination or finding of subservience to the interest of the general public that should have been done is precisely what was not done and that is specifically required by Section 67–2–6. One might try to get around this by inferring that the widening of federal highway U.S. 84/285, requiring Defendants to seek a right-of-way from the Pueblo, subserved in the interest of the general public. This Court cannot do that. We do not weigh the evidence or substitute our judgment for that of the fact finder. *State v. Mora,* 1997–NMSC–060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

{51} Nevertheless, it is what Defendants are giving up, abandoning and vacating SR 582—not what they are getting, the widening of U.S. 84/285, that must be determined to subserve the interest of the general public.

{52} I do not take issue with the other holdings in this opinion.

{53} I would remand to the district court for a determination of whether the abandonment and vacation of SR 582 subserves the interest of the general public as required by Section 67–2–6.

{54} I, therefore, respectfully dissent.